

# NUMBER 13-17-00049-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

SAMARA PORTFOLIO MANAGEMENT, LLC                    **Appellants,**
AND JOSEPH ONWUTEAKA,

**v.**

NEDA ZARGARI,                                                                 **Appellee.**

---

### On appeal from the County Court at Law No. 2
### of Travis County, Texas.

---

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Benavides and Hinojosa
### Memorandum Opinion by Chief Justice Valdez

Appellants Samara Portfolio Management, LLC and Joseph Onwuteaka appeal the trial court's judgment in favor of appellee, Neda Zargari. By six issues, appellants contend that: (1) they are not debt collectors under the Fair Debt Collection Practices Act (the "ACT"), *see* 15 U.S.C.A. § 1692a(6); (2) the statute of limitations bars Zargari's Texas Deceptive Trade Practices Act ("DTPA") claim, *see* TEX. BUS. & COM. CODE ANN. § 17.46

(West, Westlaw through 2017 1st C.S.); (3) there is no evidence or insufficient evidence of DTPA violations; (4) Zargari's claims are compulsory counterclaims; (5) there is no evidence or insufficient evidence to support the trial court's post-answer default judgment; and (6) the trial court erred in denying appellant's motion for new trial. We affirm.

## I. BACKGROUND[1]

Zargari purchased jewelry from Kay Jewelers on May 6, 2005 in Austin, Texas. Payment was due by June 6, 2005; however, Zargari failed to make payment. After it purchased Zargari's debt from Kay Jewelers, Samara sued Zargari for collection of the unpaid debt on October 23, 2009. Zargari, acting pro se, filed an answer to Samara's suit asserting that Samara had violated the Act by filing it in the wrong county and past the statute of limitations.[2] Samara filed a motion for summary judgment, which the trial court set for a hearing. However, the suit was ultimately dismissed.[3]

On March 11, 2011, Zargari sued Samara and its owner Onwuteaka in Travis County claiming that appellants violated the Act by filing suit in the wrong county and past the statute of limitations. Onwuteaka, who is a licensed attorney, also served as trial counsel in this cause. The trial court granted a default judgment against appellants, and it subsequently granted appellant's motion for new trial. Samara then counterclaimed against Zargari for the original debt and filed a motion to transfer venue to Harris County.

---

[1] This case is before the Court on transfer from the Third Court of Appeals in Austin pursuant to an order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2017 1st C.S.).

[2] The trial court issued a finding of fact that Zargari lived in Travis County, Texas and that the contract was entered in Travis County. Appellants sued Zargari in Harris County, Texas.

[3] The trial court in this cause issued finding of fact 10 stating that appellants filed a nonsuit without prejudice of the 2009 suit.

Zargari amended her petition on September 9, 2016 adding a DTPA claim. Trial was held on September 28, 2016. Onwuteaka was late to the hearing. The trial court rendered judgment before Onwuteaka appeared. According to appellants, prior to his arrival, Onwuteaka called the court to inform it that he was running late, and he was told that was fine; however, when Onwuteaka arrived, he discovered that the trial court had already rendered verdict in favor of Zargari.

Appellants filed a motion for new trial claiming that the failure to appear for trial was not intentional or the result of conscious indifference and that it had a meritorious defense. The trial court denied the motion for new trial, and this appeal followed.

## II.    SUFFICIENCY OF THE EVIDENCE

By their first issue, appellants contend that the evidence is insufficient to show that they are debt collectors as required by the Act. *See* 15 U.S.C.A. § 1692a(6). By their third issue, appellants contend that there is no evidence that they violated the DTPA. By their fifth issue, appellants contend that there is no evidence to support the trial court's post-answer default judgment. Specifically, appellants argue there is no evidence (1) of a signed, written contract, (2) that substantiates $5,000 in actual damages, and what actual damages were suffered, (3) to support the award of $2,500 for mental anguish, and (4) to support the award of attorney's fees.

## A.    Standard of Review and Applicable Law

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We review the evidence in the light most favorable to the verdict, crediting any favorable evidence if a reasonable fact-finder could

3

and disregarding any contrary evidence unless a reasonable fact-finder could not. *Id.* at 821–22, 827.

A no-evidence point will be sustained when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *see City of Keller*, 168 S.W.3d at 810. Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact, and the legal effect is that there is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

## B. Debt Collector

By their first issue, citing *Henson v. Santander Consumer USA, Inc*, appellants contend that because they were not collecting a debt for another, they were not debt collectors under the ACT. 137 S. Ct. 1718, 1724 (2017). The term debt collector under the Act means any person who: (1) uses any instrument of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts; or (2) regularly collects or attempts to collect, directly or indirectly, debts owed or asserted to be owed or due another. 15 U.S.C.A. § 1692a(6).

In *Henson*, the United States Supreme Court specified that it would only determine whether the defendant was a debt collector pursuant to the second definition of section 1692a(6), i.e., whether the "statutory language defining the term 'debt collector' [] embrace[s] anyone who 'regularly collects or attempts to collect . . . debts owed or

4

due . . . another.'" 137 S. Ct. at 1721. The Court held that, based on the second definition of debt collector, the defendant was not a debt collector because it was not seeking to collect a debt for another. *Id.* at 1724. However, the *Henson* court, explicitly stated it would not address whether the defendant was a debt collector under section 1692a(6)'s first definition, i.e., whether it "engaged 'in any business the principal purpose of which is the collection of *any* debts'"[4] *Id.* (emphasis added).

Thus, even assuming, without deciding, that appellants are not debt collectors under the second definition of section 1692a(6), it is possible that the trial court concluded that appellants are debt collectors under the first definition because they used an instrument of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts. *See* 15 U.S.C.A. § 1692a(6); *see also Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2017 WL 6406594, at *4 (N.D. Ind. Dec. 15, 2017) (explaining that *Henson* is not applicable to the first definition of section 1692a(6) and analyzing whether the defendant, which did not collect debt for another, was a debt collector under the first definition); *Tepper v. Amos Fin.*, LLC, No. 15-CV-5834, 2017 WL 3446886, at *8 (E.D. Pa. Aug. 11, 2017) ("While the second definition is limited to 'debts owed . . . another,' the first definition applies to 'any debts,' provided only that the entity's principal purpose is the collection of such debt."). However, on appeal, appellants have not challenged this alternative theory, and we are not able to make appellants' arguments for them. Accordingly, we overrule appellant's first issue.[5]

---

[4] The *Henson* court declined to address the first definition because "the parties [had not] much litigated [it] and in granting certiorari [the court had not] agree[d] to address it. . . ." *Henson v. Santander Consumer USA, Inc*, 137 S. Ct. 1718, 1724 (2017).

[5] Appellants, in their fifth issue, also argue that the evidence is insufficient to support the trial court's post-answer default judgment because there is no evidence that appellants were debt collectors. We have

5

## C.    DTPA

By their third issue,[6] appellants contend that there is no evidence that they violated the DTPA.   Specifically, appellants argue that the record does not show any signed contract.  By their fifth issue, appellants contend that there is no evidence that they were involved in a "trade" and in "commerce to mean the advertising, offering for sale, sale, lease, or distribution of any good or service, of any property."[7]

### 1.    Signed Contract

Appellants state in their brief, without citation to authority or applicable law, that "For a violation of section 17.46(b)(23) to occur, there must be a signed contract. . . ."  We will assume without deciding that it was Zargari's burden to prove the existence of a signed contract in this case.

The trial court admitted into evidence the petition filed by appellants in the 2009 suit against Zargari, and what the appellants purported to be the contract between Kay Jewelers and Zargari, a document that appellants had attached to their petition.  In their 2009 petition, appellants state that Zargari entered into an agreement with Kay Jewelers for a credit account and that the account is governed by the credit card agreement. Appellants further claimed that Zargari defaulted in making payments as per the agreement and sued Zargari for breach of written, implied in fact, and oral contract.

---

overruled appellants' first issue making the same argument.  Accordingly, we need not address this argument in their fifth issue, as it is addressed above.

[6] We have reorganized appellants' issues for purposes of ease of reading.

[7] As a sub-argument in their third issue, without stating what the findings state and why the evidence is inadequate, appellants claim that the trial court's findings 5 and 6 have no supporting evidence in the record.  This is the extent of the briefing.   Accordingly, we conclude that this argument is inadequately briefed.  *See* TEX. R. APP. P. 38.1(i).

6

Viewing the evidence in the light most favorable to the verdict, crediting any favorable evidence if a reasonable fact-finder could and disregarding any contrary evidence unless a reasonable fact-finder could not, we conclude the evidence is sufficient to support the trial court's finding that a contract existed.[8] *City of Keller*, 168 S.W.3d at 827. We overrule appellants' third issue.

### 2. Trade or Practice

By their fifth issue, appellants contend that there is no evidence that they were involved in "the advertising, offering for sale, sale, lease, or distribution of any good or service, of any property." This is the extent of their argument.[9] *See* TEX. R. APP. P. 38.1(i). Therefore, we will address this issue to the extent that we understand it.

The DTPA prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce" and creates causes of action for consumers based on the use or employment of a false, misleading, or deceptive act or practice that is included in the "laundry list" of violations. "To recover under the DTPA, the plaintiff must show that: (1) he is a consumer; (2) the defendant engaged in a false, misleading, or deceptive act; and (3) the act constituted a producing cause of the plaintiff's damages." *See Sparks v. Booth*, 232 S.W.3d 853, 864 (Tex. App.—Dallas 2007, no pet.) (citing *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex.1995)). A consumer under section 17.45(4) of the DTPA is defined as "'an individual . . . who seeks or

---

[8] The trial court found that appellants "Defendants knowingly and intentionally caused Plaintiff to be served with that lawsuit on a consumer debt in a county other than where she resided at the time suit was filed and other than where *she entered into the underlying consumer contract*." (Emphasis added).

[9] The DTPA prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce" and creates causes of action for consumers based on the use or employment of a false, misleading, or deceptive act or practice that is included in the "laundry list" of violations.

7

acquires by purchase or lease, any goods or services.'" *Flenniken v. Longview Bank & Tr. Co.*, 661 S.W.2d 705, 706 (Tex. 1983) (citing TEX. BUS. & COM. CODE ANN. § 17.50(a)). Goods include tangible chattels or real property. TEX. BUS. & COM. CODE ANN. § 17.45(1).

In their 2009 petition, appellants state that Zargari "used" her Kay Jewelers "[a]ccount to make purchases of goods and/or services. . . ." And, at trial, Zargari testified that appellants had filed their 2009 suit against her for an unpaid debt on a consumer transaction. Zargari testified that she bought some jewelry from Kay Jewelers for herself.

Appellants appear to assume that Zargari was required to show that appellants furnished goods and services to her to prevail on her DTPA claim. *See id.* (prohibiting "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," which is defined as the "advertising, offering for sale, sale, lease, or distribution of any good or service, of any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value, wherever situated. . . ."). TEX. BUS. CODE ANN. § 17.45(6). However, the DTPA does not only apply to the deceptive trade practices committed by the persons who furnish the goods or services on which the complaint is based. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 541 (Tex. 1981). The DTPA defines a consumer by the relationship that the person has with a transaction in goods or services and not the relationship the person has with the defendant. *Id.* Here, it is undisputed that the underlying transaction between Zargari and Kay Jewelers was a consumer transaction. And, Zargari was not required to show that her interaction with appellants also involved a consumer transaction. *See id.* Viewing the evidence in the light most favorable to the verdict, crediting any favorable evidence if a reasonable fact-finder could and disregarding any contrary evidence unless a reasonable fact-finder could

8

not, we conclude the evidence is sufficient to support the trial court's finding that Zargari was a consumer because she purchased tangible chattel from Kay Jewelers and that the transaction with Kay Jewelers involved trade or commerce.[10] *See City of Keller*, 168 S.W.3d at 827; *see also Cameron*, 618 S.W.2d at 541. Thus, appellants' fifth issue is without merit, and we overrule it.

## D. Actual Damages

Next, by their first sub-issue to their fifth issue, appellants contend that there is no evidence in the record to support the trial court's award of actual damages of $5,000 for mental anguish.

> [A]n award of mental anguish damages will survive a legal sufficiency challenge when the plaintiffs have introduced direct evidence of the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiff's daily routine. Such evidence, whether in the form of the claimant's own testimony, that of third parties, or that of experts, is more likely to provide the fact finder with adequate details to assess mental anguish claims.

*Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995). When the record does not include "direct evidence of the nature, duration, or severity of their anguish, we apply traditional 'no evidence' standards to determine whether the record reveals any evidence

---

[10] We note that although generally, a pure loan transaction lies outside the DTPA, a plaintiff may nonetheless qualify as a consumer under the DTPA if the plaintiff obtains a loan which is "inextricably intertwined" in the purchase or lease of a good or service. *Knight v. Int'l Harvester Credit Corp.*, 627 S.W.2d 382, 389 (Tex.1982) (finding that a bank customer qualified as a consumer because he sought financing to purchase a dump truck); *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 707 (Tex.1983) (concluding that the plaintiff was a consumer under the DTPA because the plaintiff's mortgage loan was intertwined with a contractor's agreement to build a house). However, appellant does not argue that Zargari was not a consumer because she acquired a loan to purchase the jewelry. Accordingly, this issue is not before us. Nonetheless, here, Kay Jewelers provided the loan to Zargari to purchase jewelry from Kay Jewelers; thus, the loan acquired by Zargari was inextricably intertwined in the purchase or lease of a good. *See Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 134 (Tex. App.—Corpus Christi 2001, no writ) ("To hold a creditor liable in a consumer credit transaction, the creditor must be shown to have some connection with either the actual sales transaction or with a deceptive act related to financing the transaction.").

9

of 'a high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger' to support any award of damages. *Id.* (quoting *J.B. Custom Design & Bldg. v. Clawson*, 794 S.W.2d 38, 43 (Tex. App.—Houston [1st Dist.] 1990, no writ)).

Here, Zargari testified that she had incurred attorney's fees to defend herself in the underlying 2009 debt collection suit filed by appellants and that even after her attorney informed appellants that they had sued her in the wrong county in violation of the ACT and that the statute of limitations had expired, appellants continued with their suit against her. According to Zargari, she showed up on the trial date, and appellants failed to appear, then the suit was dismissed against her. Zargari testified that she had experienced mental anguish due to being sued in the wrong county and past the statute of limitations. When asked to tell the trial court what kind of mental anguish, she replied, "The day that they wanted to serve and the sheriff came to the house, it—I was so scared, and I had anxiety for a while and I had to go to the doctor. It wasn't an easy time. And every once in a while, I get that letter again that he doesn't drop it so I've been kind of having anxiety." Zargari acknowledged that having anxiety when the sheriff serves the suit is normal but that she had "never experienced the one when the sheriff came to the door to serve that." Zargari claimed that the anxiety would have been less had she been sued in Travis County where she lives and where the transaction took place. Zargari said that she had been "[s]tressing over how to get there and getting off the job." She said, "If I get there on time to be in the court or I don't. All of those make me more stressed out and having more anxiety."

10

Regarding her physical symptoms, Zargari testified, "I was so stressed out after that that my mouth kind of turned, and it was like that for two months." Zargari explained that "It's kind of stress that one side of the nerve, they get paralyzed on my face." Zargari testified that she saw a physician two times for the paralysis of her face during the time of the underlying debt collection lawsuit filed by appellants. Zargari indicated that the doctor prescribed a medication and that there was also pain involved.

Viewing the evidence in the light most favorable to the verdict, crediting any favorable evidence if a reasonable fact-finder could and disregarding any contrary evidence unless a reasonable fact-finder could not, we conclude the evidence is sufficient to support the trial court's finding that Zargari was entitled to mental anguish damages. *See City of Keller*, 168 S.W.3d at 827.

Next, appellants argue that there is no evidence to support the amount of actual damages.[11] The damages awarded are damages that are allowed under the ACT, *Smith*, 124 B.R. at 187, and under the DTPA.[12] *Pace v. State*, 650 S.W.2d 64, 65 (Tex. 1983) ("[T]reble damages under the DTPA are punitive damages.").

The trial court did not award Zargari $5,000 for mental anguish as appellant claims. Instead, the trial court awarded $2,500 for mental anguish damages. *See Chiverton v. Federal Financial Group, Inc.*, 399 F.Supp.2d 96 (D.Conn.2005) ("Damages for emotional distress caused by defendant's violations [under the ACT] are recoverable as a part of actual damages under the [ACT]"); *Smith v. Law Offices of Mitchell N. Kay*, 124 B.R. 182, 187 (D. Del. 1991) (recognizing that a plaintiff was awarded $2,500 in actual damages

---

[11] Appellants do not argue that the award of damages was excessive.

[12] Appellants do not argue that the trial court was prohibited from awarding punitive damages under the DTPA in this case.

11

under the ACT because "he suffered by reason of his mental anguish and had symptoms of sleeplessness and nervousness . . . .") (quoting *Millstone v. O'Hanlon Reports, Inc.*, 383 F.Supp. 269, 276 (E.D.Mo.1974), *aff'd*, 528 F.2d 829 (1979)); *Bryant v. TRW, Inc.*, 487 F.Supp. 1234 (E.D.Mich.1980), *aff'd*, 689 F.2d 72 (6th Cir.1982) (upholding award of mental anguish damages of $8,000 under the ACT although no out-of-pocket expenses or actual dollar losses were proven); *see also Harrington v. Nat'l Enter. Sys., Inc.*, No. 4:08cv422, 2010 WL 890176, at *4 (E.D.Tex. Mar. 9, 2010) (providing that damages for emotional distress are considered actual damages under the ACT).

The award of mental anguish damages is speculative by design and the amount is peculiarly within the province of the fact-finder; thus, we cannot conclude that the trial court's award of $2,500 for mental anguish is not supported by the evidence.[13]  *See Rosenblum v. Bloom*, 492 S.W.2d 321, 325 (Tex. Civ. App.—Waco 1973, writ ref'd n.r.e.). We overrule appellants' first sub-issue to their fifth issue.

## E.    Attorney's Fees

By their second sub-issue to their fifth issue, appellants complain that "the record is unclear as to how much Zargari incurred in attorney's fees [for her DTPA claim],

---

[13] Appellants claim that the trial court awarded $5,000 for mental anguish.  However, as previously stated, the trial court in its judgment awarded $2,500 for mental anguish damages.  The trial court also awarded an additional $5,000 in actual damages, which the trial court, pursuant to the DTPA could have awarded as treble damages, which totals $7,500 ($2,500 x 3 = $7,500).  *See Tidelands Life Ins. Co. v. Franco*, 711 S.W.2d 728, 729 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e.) ("Consistent with the legislative purpose, we hold that under section 17.50(b)(1), the maximum amount of damages recoverable in a suit in which actual damages resulting from a knowing violation of the DTPA exceed $1000 is three times the first $1000 of actual damages plus three times the actual damages in excess of $1000.  That amount is equal to a trebling of actual damages."); *Smith v. Kinslow*, 598 S.W.2d 910, 913 (Tex. Civ. App.—Dallas 1980, no writ) ("The supreme court has characterized section 17.50(b) as making available a 'list of alternative remedies' from which the consumer may choose.  If he sues for 'actual damages,' subdivision (b)(1) authorizes recovery of three times the amount of actual damages proved. . . .").  Appellants do not argue that the trial court' was prohibited from awarding treble damages in this case.

12

whether the attorney's fees award are reasonable and necessary, given that no contemporaneous records [were] produced." This is the extent of appellants' argument.

"Texas courts have not routinely required billing records or other documentary evidence to substantiate a claim for attorney's fees." *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 762 (Tex. 2012). The Texas Supreme Court in *El Apple* held that under the federal lodester method of calculating attorney's fees, "the claimant must produce evidence of who performed the legal services, when the services were performed, and the amount of time spent on various parts of the case." *Metroplex Mailing Servs., LLC v. RR Donnelley & Sons Co.*, 410 S.W.3d 889, 900 (Tex. App.—Dallas 2013, no pet.) (citing *El Apple I, Ltd.*, 370 S.W.3d at 760). "Nowhere in *El Apple* did the court conclude that all attorney's fees recoveries in Texas would thereafter be governed by the lodestar approach and we do not draw that conclusion here." *Id.* However, even under the lodester method, the supreme court recognized that "[a]n attorney could, of course, testify to these details. . . ." *El Apple I, Ltd.*, 370 S.W.3d at 760. The *El Apple* court noted, however, that under the lodester method "in all but the simplest cases, the attorney would probably have to refer to some type of record or documentation to provide this information." *Id.*

As previously stated, Texas courts do not require documentary evidence to support an award of attorney's fees, however, despite appellants' claims, the record contains a detailed summary of the expenses Zargari incurred for attorney's fees which the trial court admitted into evidence as Plaintiff's Exhibit 11. Moreover, Zargari's trial counsel testified that the total amount of attorney's fees incurred was $8,707.50, which the trial court awarded. Accordingly, we overrule appellants' second sub-issue to their fifth issue.

### III.    STATUTE OF LIMITATIONS ON DTPA CLAIM

By their second issue, appellants contend that the trial court erred in basing its judgment on the DTPA because the statute of limitations had expired.[14] Appellees respond that the relation-back doctrine applies.

The relation-back doctrine provides as follows:

> If a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

TEX. CIV. PRAC. & REM. CODE ANN. § 16.068 (West, Westlaw through 2017 1st C.S.).

Here, Zargari originally pleaded that appellants violated the ACT by filing suit in the wrong county and by filing the suit outside the statute of limitations, which are both prohibited by the ACT. *See* 15 U.S.C.A. § 1692i(2); *In re Dubois*, 834 F.3d 522, 527 (4th Cir. 2016) (recognizing that courts have construed the ACT as prohibiting a debtor from suing for debts that are time-barred by the statute of limitations). In her amended pleadings, Zargari claimed that appellants violated the DTPA for the same reasons she claimed that appellants violated the ACT, as set out in her original petition. *See* TEX. BUS. & COM. CODE ANN. § 17.46 ("[F]iling suit founded upon a written contractual obligation of and signed by the defendant to pay money arising out of or based on a consumer transaction for goods, services . . . intended primarily for personal, family, household, or agricultural use in any county other than in the county in which the defendant resides at the time of the commencement of the action or in the county in which the defendant in fact signed the contract"). Accordingly, we conclude that the relation-back doctrine

---

[14] Appellants do not contend in their brief that the statute of limitations bars Zargari's claim under the Act.

14

applies because Zargari's amended DTPA pleading relates to the original pleading under the ACT that was not subject to a plea of limitation when it was filed and the amended pleading, although it changed the grounds of liability, was not wholly based on a new, distinct, or different transaction or occurrence. *See id.* We overrule appellants' third issue.

## IV. COMPULSORY COUNTERCLAIMS

By their fourth issue, appellants contend that Zargari's claims pursuant to the ACT and DTPA are compulsory claims that should have been brought as counterclaims in the 2009 underlying suit.

> When considering whether a counterclaim is compulsory, Texas courts have applied the "logical relationship" test to determine if a claim arises out of the same transaction or occurrence. Under this test, a transaction is flexible, comprehending a series of many occurrences logically related to one another. To arise from the same transaction, at least some of the facts must be relevant to both claims.
>
> Texas courts have also addressed the question of "same transaction or occurrence" in the context of consolidation. To consolidate cases, a trial court must determine whether the actions relate to substantially the same transaction, occurrence, subject matter, or question, and whether they are so related that evidence presented will be material, relevant, and admissible in each case. Although cases may involve common issues of law, if they each stem from distinct factual scenarios that would tend to confuse or prejudice the jury, consolidation may not be proper. We conclude the "logical relationship test" and the "test for proper consolidation" are the same. . . .

*Blalock Prescription Ctr., Inc. v. Lopez-Guerra*, 986 S.W.2d 658, 663–64 (Tex. App.—Corpus Christi 1998, no pet.) (internal citations omitted).

Appellants generally assert that Zargari's claims under the ACT and the DTPA are compulsory counterclaims. However, appellants do not contend that Zargari's claims that appellants filed suit in the wrong county and after the statute of limitations had expired

15

substantially relate to or arise from her failure to pay a debt.  *See* TEX. R. APP. P. 38.1(i). Nonetheless, Zargari's claims required her to prove that appellants filed their suit against her outside the statute of limitations and in the wrong county, while appellants in the 2009 suit had to show that Zargari breached a contract.  We find the federal case of *Serna v. Law Office of Joseph Onwuteaka, PC,* instructive and persuasive to this issue.  2014 WL 109402 (S.D. Tex. 2014), *aff'd sub nom.* 614 Fed.Appx. 146 (5th Cir. 2015).  In *Serna,* Onwuteaka made the same argument he makes here—that the plaintiff's claims under the ACT were compulsory counterclaims to his breach of contract claims for an unpaid debt.  *Id.* at *7.  The court concluded that the claims were not compulsory and stated the following:

> Although the promissory note between Serna and the First Bank of Delaware is factually relevant to both Onwuteaka's debt collection suit and Serna's suit [pursuant to the ACT], they do not arise out of the same transaction or occurrence.  The former dispute arose out of Serna's breach of his agreement to repay the loan, and the latter arose out of Onwuteaka's filing suit in an improper venue.  The events are distinct and, therefore, Serna's claim [under the ACT] is not a compulsory counterclaim to the underlying debt collection suit.

*Id.*  We agree with this reasoning, and we conclude that Zargari's claims were not compulsory counterclaims.  *See Bauman v. Bank of Am.,* N.A., 808 F.3d 1097, 1101 (6th Cir. 2015) (concluding that debt collection action was not a compulsory counterclaim to the plaintiff's claims under the ACT); *see also* 2014 WL 109402 at *7.  We overrule appellants' fourth issue.

## V.     *CRADDOCK*

By their sixth issue, appellants claim that they met the *Craddock* elements at the motion for new trial.  *See Craddock v. Sunshine Bus Lines, Inc.,* 133 S.W.2d 124, 125 (Tex. 1939).

16

To prevail under *Craddock* and set aside a default judgment, the defendant must establish that its reason for not appearing was due to a mistake or accident and was not the result of conscious indifference; "provided the motion sets up a meritorious defense and is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff." *See id.* Regarding their meritorious defense, appellants baldly assert, that they "set[] up a meritorious defense, including, counterclaims." This is the extent of appellants' briefing on the issue. We are not required to make appellants' argument for them, and we decline to do so. If we were to address this issue, we would become an advocate, which we are not permitted to do. *See* TEX. R. APP. P. 38.1(i); *Paselk v. Raburn*, 293 S.W.3d 600, 613 (Tex. App.—Texarkana 2009, pet. denied) ("It is not the proper role of this Court to create arguments for an appellant—we will not do the job of the advocate."); *Maranatha Temple, Inc. v. Enter. Prods. Co.*, 893 S.W.2d 92, 106 (Tex. App.—Houston [1st Dist.] 1994, writ denied) ("When the appellant does not provide us with argument that is sufficient to make an appellate complaint viable, we will not perform an independent review of the record and applicable law in order to determine whether the error complained of occurred."). Accordingly, we overrule appellants' sixth issue.

## VI.  CONCLUSION

We affirm the trial court's judgment.

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
14th day of June, 2018.

17