(Slip Opinion) OCTOBER TERM, 2016 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## HENSON ET AL. *v.* SANTANDER CONSUMER USA INC.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 16–349. Argued April 18, 2017—Decided June 12, 2017

The Fair Debt Collection Practices Act authorizes private lawsuits and weighty fines designed to deter the wayward practices of "debt collector[s]," a term embracing anyone who "regularly collects or attempts to collect . . . debts owed or due . . . another." 15 U. S. C. §1692a(6). The complaint filed in this case alleges that CitiFinancial Auto loaned money to petitioners seeking to buy cars; that petitioners defaulted on those loans; and that respondent Santander then purchased the defaulted loans from CitiFinancial and sought to collect in ways petitioners believe violated the Act. The district court and Fourth Circuit held that Santander didn't qualify as a debt collector because it did not regularly seek to collect debts "owed . . . another" but sought instead only to collect debts that it purchased and owned.

*Held*: A company may collect debts that it purchased for its own account, like Santander did here, without triggering the statutory definition in dispute. By defining debt collectors to include those who regularly seek to collect debts "owed . . . another," the statute's plain language seems to focus on third party collection agents regularly collecting for a debt owner—not on a debt owner seeking to collect debts for itself.

Petitioners' arguments to the contrary do not dislodge the statute's plain meaning. Petitioners point out that the word "owed" is the *past* participle of the verb "to owe," and so suggest that the debt collector definition must exclude loan originators (who never seek to collect debts previously owed someone else) but embrace debt purchasers like Santander (who necessarily do). But past participles like "owed" are routinely used as adjectives to describe the present state of a thing. Congress also used the word "owed" to refer to present debt relationships in neighboring provisions of the Act, and petitioners have

not rebutted the presumption that identical words in the same stat-
ute carry the same meaning.  Neither would reading the word "owed"
to refer to present debt relationships render any of the Act's provi-
sions surplusage, contrary to what petitioners suggest.

Petitioners also contend that their interpretation best furthers the
Act's perceived purposes because, they primarily argue, if Congress
had been aware of defaulted debt purchasers like Santander it would
have treated them like traditional debt collectors because they pose
similar risks of abusive collection practices.  But it is not this Court's
job to rewrite a constitutionally valid text under the banner of specu-
lation about what Congress might have done had it faced a question
that, on everyone's account, it never faced.  And neither are petition-
ers' policy arguments unassailable, as reasonable legislators might
contend both ways on the question of how defaulted debt purchasers
should be treated.  This fact suggests for certain but one thing: that
these are matters for Congress, not this Court, to resolve.  Pp. 3–11.

817 F. 3d 131, affirmed.

GORSUCH, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———

No. 16–349

———

### RICKY HENSON, ET AL., PETITIONERS *v.* SANTANDER CONSUMER USA INC.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

[June 12, 2017]

JUSTICE GORSUCH delivered the opinion of the Court.

Disruptive dinnertime calls, downright deceit, and more besides drew Congress's eye to the debt collection industry. From that scrutiny emerged the Fair Debt Collection Practices Act, a statute that authorizes private lawsuits and weighty fines designed to deter wayward collection practices. So perhaps it comes as little surprise that we now face a question about who exactly qualifies as a "debt collector" subject to the Act's rigors. Everyone agrees that the term embraces the repo man—someone hired by a creditor to collect an outstanding debt. But what if you purchase a debt and then try to collect it for yourself— does that make you a "debt collector" too? That's the nub of the dispute now before us.

The parties approach the question from common ground. The complaint alleges that CitiFinancial Auto loaned money to petitioners seeking to buy cars; that petitioners defaulted on those loans; that respondent Santander then purchased the defaulted loans from CitiFinancial; and that Santander sought to collect in ways petitioners believe troublesome under the Act. The parties agree, too,

that in deciding whether Santander's conduct falls within the Act's ambit we should look to statutory language defining the term "debt collector" to embrace anyone who "regularly collects or attempts to collect . . . debts owed or due . . . another." 15 U. S. C. §1692a(6).

Even when it comes to that question, the parties agree on at least part of an answer. Both sides accept that third party debt collection agents generally qualify as "debt collectors" under the relevant statutory language, while those who seek only to collect for themselves loans they originated generally do not. These results follow, the parties tell us, because debt collection agents seek to collect debts "owed . . . another," while loan originators acting on their own account aim only to collect debts owed to themselves. All that remains in dispute is how to classify individuals and entities who regularly purchase debts originated by someone else and then seek to collect those debts for their own account. Does the Act treat the debt purchaser in that scenario more like the repo man or the loan originator?

For their part, the district court and Fourth Circuit sided with Santander. They held that the company didn't qualify as a debt collector because it didn't regularly seek to collect debts "owed . . . another" but sought instead only to collect debts that it purchased and owned. At the same time, the Fourth Circuit acknowledged that some circuits faced with the same question have ruled otherwise—and it is to resolve this conflict that we took the case. Compare 817 F. 3d 131, 133–134, 137–138 (2016) (case below); *Davidson* v. *Capital One Bank (USA), N. A.*, 797 F. 3d 1309, 1315–1316 (CA11 2015), with *McKinney* v. *Caldeway Properties, Inc.*, 548 F. 3d 496, 501 (CA7 2008); *FTC* v. *Check Investors, Inc.*, 502 F. 3d 159, 173–174 (CA3 2007).

Before attending to that job, though, we pause to note two related questions we do not attempt to answer today.

First, petitioners suggest that Santander can qualify as a debt collector not only because it regularly seeks to collect for its own account debts that it has purchased, but also because it regularly acts as a third party collection agent for debts owed to others. Petitioners did not, however, raise the latter theory in their petition for certiorari and neither did we agree to review it. Second, the parties briefly allude to another statutory definition of the term "debt collector"—one that encompasses those engaged "in any business the principal purpose of which is the collection of any debts." §1692a(6). But the parties haven't much litigated that alternative definition and in granting certiorari we didn't agree to address it either.

With these preliminaries by the board, we can turn to the much narrowed question properly before us. In doing so, we begin, as we must, with a careful examination of the statutory text. And there we find it hard to disagree with the Fourth Circuit's interpretive handiwork. After all, the Act defines debt collectors to include those who regularly seek to collect debts "owed . . . another." And by its plain terms this language seems to focus our attention on third party collection agents working for a debt owner— not on a debt owner seeking to collect debts for itself. Neither does this language appear to suggest that we should care how a debt owner came to be a debt owner— whether the owner originated the debt or came by it only through a later purchase. All that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for "another." And given that, it would seem a debt purchaser like Santander may indeed collect debts for its own account without triggering the statutory definition in dispute, just as the Fourth Circuit explained.

Petitioners reply that this seemingly straightforward reading overlooks an important question of tense. They observe that the word "owed" is the *past* participle of the

verb "to owe." And this, they suggest, means the statute's definition of debt collector captures anyone who regularly seeks to collect debts *previously* "owed . . . another." So it is that, on petitioners' account, the statute excludes from its compass loan originators (for they never seek to collect debts previously owed someone else) but embraces many debt purchasers like Santander (for in collecting purchased debts they necessarily seek to collect debts previously owed another). If Congress wanted to exempt all present debt owners from its debt collector definition, petitioners submit, it would have used the *present* participle "owing." That would have better sufficed to do the job—to make clear that you must collect debts *currently* "owing . . . another" before implicating the Act.

But this much doesn't follow even as a matter of good grammar, let alone ordinary meaning. Past participles like "owed" are routinely used as adjectives to describe the present state of a thing—so, for example, *burnt* toast is inedible, a *fallen* branch blocks the path, and (equally) a debt *owed* to a current owner may be collected by him or her. See P. Peters, The Cambridge Guide to English Usage 409 (2004) (explaining that the term "past participle" is a "misnomer[ ], since" it "can occur in what is technically a present . . . tense"). Just imagine if you told a friend that you were seeking to "collect a debt owed to Steve." Doesn't it seem likely your friend would understand you as speaking about a debt *currently* owed to Steve, not a debt Steve *used* to own and that's now actually yours? In the end, even petitioners find themselves forced to admit that past participles can and regularly do work just this way, as adjectives to describe the present state of the nouns they modify. See Brief for Petitioners 28; see also B. Garner, Modern English Usage 666 (4th ed. 2016) (while "*owing* . . . is an old and established usage . . . the more logical course is simply to write *owed*").

Widening our view to take in the statutory phrase in

which the word "owed" appears—"owed or due . . . another"—
serves to underscore the point. Petitioners acknowledge
that the word "due" describes a debt *currently* due at the
time of collection and not a debt that *was* due only in some
previous period. Brief for Petitioners 26–28. So to rule for
them we would have to suppose Congress set two words
cheek by jowl in the same phrase but meant them to speak
to entirely different periods of time. All without leaving
any clue. We would have to read the phrase not as refer-
ring to "debts that *are* owed or due another" but as de-
scribing "debts that *were* owed or *are* due another." And
supposing such a surreptitious subphrasal shift in time
seems to us a bit much. Neither are we alone in that
assessment, for even petitioners acknowledge that theirs
"may not be the most natural interpretation of the phrase
standing in isolation." *Id.,* at 26–27.

Given that, you might wonder whether extending our
gaze from the narrow statutory provision at issue to take
in the larger statutory landscape might offer petitioners a
better perspective. But it does not. Looking to other
neighboring provisions in the Act, it quickly comes clear
that Congress routinely used the word "owed" to refer to
present (not past) debt relationships. For example, in one
nearby subsection, Congress defined a creditor as someone
"to whom a debt is owed." 15 U. S. C. §1692a(4). In an-
other subsection, too, Congress required a debt collector to
identify "the creditor to whom the debt is owed."
§1692g(a)(2). Yet petitioners offer us no persuasive reason
why the word "owed" should bear a different meaning
here, in the subsection before us, or why we should aban-
don our usual presumption that "identical words used in
different parts of the same statute" carry "the same mean-
ing." *IBP, Inc.* v. *Alvarez*, 546 U. S. 21, 34 (2005).

Still other contextual clues add to petitioners' problems.
While they suggest that the statutory definition before us
implicitly distinguishes between loan originators and debt

purchasers, a pass through the statute shows that when Congress wished to distinguish between originators and purchasers it left little doubt in the matter. In the very definitional section where we now find ourselves working, Congress expressly differentiated between a person "who offers" credit (the originator) and a person "to whom a debt is owed" (the present debt owner). §1692a(4). Elsewhere, Congress recognized the distinction between a debt "originated by" the collector and a debt "owed or due" another. §1692a(6)(F)(ii). And elsewhere still, Congress drew a line between the "original" and "current" creditor. §1692g(a)(5). Yet no similar distinction can be found in the language now before us. To the contrary, the statutory text at issue speaks not at all about originators and current debt owners but only about whether the defendant seeks to collect on behalf of itself or "another." And, usually at least, when we're engaged in the business of interpreting statutes we presume differences in language like this convey differences in meaning. See, *e.g., Loughrin* v. *United States*, 573 U. S. ___, ___ (2014).

Even what may be petitioners' best piece of contextual evidence ultimately proves unhelpful to their cause. Petitioners point out that the Act exempts from the definition of "debt collector" certain individuals who have "obtained" particular kinds of debt—for example, debts not yet in default or debts connected to secured commercial credit transactions. §§1692a(6)(F)(iii) and (F)(iv). And because these exemptions contemplate the possibility that someone might "obtain" a debt "owed or due . . . another," petitioners submit, the word "owed" must refer only to a *previous* owner. *Ibid.* This conclusion, they say, necessarily follows because, once you have "obtained" a debt, that same debt just cannot be *currently* "owed or due" another.

This last and quite essential premise of the argument, however, misses its mark. As a matter of ordinary Eng-

lish, the word "obtained" can (and often does) refer to taking possession of a piece of property without also taking ownership—so, for example, you might obtain a rental car or a hotel room or an apartment. See, *e.g.,* 10 Oxford English Dictionary 669 (2d ed. 1989) (defining "obtain" to mean, among other things, "[t]o come into the possession or enjoyment of (something) by one's own effort or by request"); *Kirtsaeng* v. *John Wiley & Sons, Inc.*, 568 U. S. 519, 532–533 (2013) (distinguishing between ownership and obtaining possession). And it's easy enough to see how you might also come to possess (obtain) a debt without taking ownership of it. You might, for example, take possession of a debt for servicing and collection even while the debt formally remains owed another. Or as a secured party you might take possession of a debt as collateral, again without taking full ownership of it. See, *e.g.*, U. C. C. §9–207, 3 U. L. A. 197 (2010). So it simply isn't the case that the statute's exclusions imply that the phrase "owed . . . another" must refer to debts *previously* owed to another.

By this point petitioners find themselves in retreat. Unable to show that debt purchasers regularly collecting for their own account always qualify as debt collectors, they now suggest that purchasers sometimes qualify as debt collectors. On their view, debt purchasers surely qualify as collectors at least when they regularly purchase and seek to collect *defaulted* debts—just as Santander allegedly did here. In support of this narrower and more particular understanding of the Act, petitioners point again to the fact that the statute excludes from the definition of "debt collector" certain persons who obtain debts before default. 15 U. S. C. §1692a(6)(F)(iii). This exclusion, petitioners now suggest, implies that the term "debt collector" must embrace those who regularly seek to collect debts obtained after default. Others aligned with petitioners also suggest that the Act treats everyone who

attempts to collect a debt as either a "debt collector" or a "creditor," but not both. And because the statutory definition of the term "creditor" excludes those who seek to collect a debt obtained "in default," §1692a(4), they contend it again follows as a matter of necessary inference that these persons must qualify as debt collectors.

But these alternative lines of inferential argument bear their own problems. For while the statute surely excludes from the debt collector definition certain persons who acquire a debt before default, it doesn't necessarily follow that the definition must include anyone who regularly collects debts acquired after default. After all and again, under the definition at issue before us you have to attempt to collect debts owed *another* before you can ever qualify as a debt collector. And petitioners' argument simply does not fully confront this plain and implacable textual prerequisite. Likewise, even spotting (without granting) the premise that a person cannot be both a creditor and a debt collector with respect to a particular debt, we don't see why a defaulted debt purchaser like Santander couldn't qualify as a creditor. For while the creditor definition excludes persons who "receive an assignment or transfer of a debt in default," it does so only (and yet again) when the debt is assigned or transferred "*solely* for the purpose of facilitating collection of such debt *for another*." *Ibid.* (emphasis added). So a company collecting purchased defaulted debt for its own account—like Santander— would hardly seem to be barred from qualifying as a creditor under the statute's plain terms.

Faced with so many obstacles in the text and structure of the Act, petitioners ask us to move quickly on to policy. Indeed, from the beginning that is the field on which they seem most eager to pitch battle. Petitioners assert that Congress passed the Act in large measure to add new incentives for independent debt collectors to treat consumers well. In their view, Congress excluded loan originators

from the Act's demands because it thought they already faced sufficient economic and legal incentives to good behavior. But, on petitioners' account, Congress never had the chance to consider what should be done about those in the business of purchasing defaulted debt. That's because, petitioners tell us, the "advent" of the market for defaulted debt represents "'one of the most significant changes'" to the debt market generally since the Act's passage in 1977. Brief for Petitioners 8 (quoting Consumer Financial Protection Bureau, Fair Debt Collection Practices Act: CFPB Annual Report 2014, p. 7 (2014)). Had Congress known this new industry would blossom, they say, it surely would have judged defaulted debt purchasers more like (and in need of the same special rules as) independent debt collectors. Indeed, petitioners contend that no other result would be consistent with the overarching congressional goal of deterring untoward debt collection practices.

All this seems to us quite a lot of speculation. And while it is of course our job to apply faithfully the law Congress has written, it is never our job to rewrite a constitutionally valid statutory text under the banner of speculation about what Congress might have done had it faced a question that, on everyone's account, it never faced. See *Magwood* v. *Patterson*, 561 U. S. 320, 334 (2010) ("We cannot replace the actual text with speculation as to Congress' intent"). Indeed, it is quite mistaken to assume, as petitioners would have us, that "whatever" might appear to "further[ ] the statute's primary objective must be the law." *Rodriguez* v. *United States*, 480 U. S. 522, 526 (1987) (*per curiam*) (emphasis deleted). Legislation is, after all, the art of compromise, the limitations expressed in statutory terms often the price of passage, and no statute yet known "pursues its [stated] purpose[ ] at all costs." *Id.,* at 525–526. For these reasons and more besides we will not presume with petitioners that any result consistent with their account of the statute's overarching goal must be the law

but will presume more modestly instead "that [the] legis-
lature says . . . what it means and means . . . what it says."
*Dodd* v. *United States*, 545 U. S. 353, 357 (2005) (internal
quotation marks omitted; brackets in original).

Even taken on its own terms, too, the speculation peti-
tioners urge upon us is far from unassailable. After all, is
it really impossible to imagine that reasonable legislators
might contend both ways on the question whether defaulted
debt purchasers should be treated more like loan origina-
tors than independent debt collection agencies? About
whether other existing incentives (in the form of common
law duties, other statutory and regulatory obligations,
economic incentives, or otherwise) suffice to deter debt
purchasers from engaging in certain undesirable collection
activities? Couldn't a reasonable legislator endorsing the
Act as written wonder whether a large financial institu-
tion like Santander is any more or less likely to engage in
abusive conduct than another large financial institution
like CitiFinancial Auto? Especially where (as here) the
institution says that its primary business is loan origina-
tion and not the purchase of defaulted debt? We do not
profess sure answers to any of these questions, but ob-
serve only that the parties and their *amici* manage to
present many and colorable arguments both ways on them
all, a fact that suggests to us for certain but one thing:
that these are matters for Congress, not this Court, to
resolve.

In the end, reasonable people can disagree with how
Congress balanced the various social costs and benefits in
this area. We have no difficulty imagining, for example, a
statute that applies the Act's demands to anyone collecting
any debts, anyone collecting debts originated by another,
or to some other class of persons still. Neither do we doubt
that the evolution of the debt collection business might
invite reasonable disagreements on whether Congress
should reenter the field and alter the judgments it made

in the past. After all, it's hardly unknown for new business models to emerge in response to regulation, and for regulation in turn to address new business models. Constant competition between constable and quarry, regulator and regulated, can come as no surprise in our changing world. But neither should the proper role of the judiciary in that process—to apply, not amend, the work of the People's representatives.

The judgment of the Court of Appeals is

*Affirmed.*