OPINION
 

 THAPAR, Circuit Judge.
 

 Sometimes bankrupt debtors want to hold on to legal claims that pre-date their bankruptcies. They are allowed to do so— but only if they reserve those claims in their reorganization plans. The question in this appeal is exactly what a debtor needs to say about a claim to preserve it for later.
 

 I.
 

 The facts are undisputed. Mountain Glacier and Nestlé Waters were in the middle of an arbitration when Mountain Glacier filed for bankruptcy. The bankruptcy automatically stayed the companies’ arbitration. See 11 U.S.C. § 362(a)(1). And it remained stayed until the bankruptcy court confirmed Mountain Glacier’s plan of reorganization and the bankruptcy proceedings ended.
 

 Shortly thereafter, Mountain Glacier attempted to resume arbitration. But Nestlé Waters objected, claiming that Mountain Glacier failed to properly reserve the arbitration claim in its reorganization plan. Mountain Glacier disagreed. And so did the bankruptcy court and the district court. Nestlé Waters now appeals. We review the bankruptcy court’s legal conclusions de novo. McMillan v. LTV Steel Inc., 555 F.3d 218, 225 (6th Cir. 2009).
 

 II.
 

 At least in broad strokes, the Chapter 11 bankruptcy process is quite simple. The idea is to provide a debtor on its last leg the means to reorganize. But to do so, the debtor must follow certain rules. For one, the debtor must file a disclosure statement. 11 U.S.C. § 1125(b)—(c). This is essentially an inventory of all the debtor’s assets and liabilities, which the debtor files with the court and shares with creditors. Id. That inventory gives creditors the information they need to “make an informed judgment about the [reorganization] plan”—i.e., the debtor’s ultimate plan to get back on track and pay off (at least some) of its debts. Id. § 1125(a). If a creditor believes that the debtor has not provided “adequate information,” that creditor can object to the disclosure statement. See 9C Am. Jur. 2d Bankruptcy § 2840 (2017).
 

 Just like every other Chapter 11 debtor, Mountain Glacier had to follow this process. So it submitted a disclosure statement to the bankruptcy court detailing its assets and liabilities, as well as a plan of reorganization outlining how it intended to pay its creditors. One of its assets was its stayed claim against Nestlé Waters. The disclosure statement described the claim as “a counterclaim asserted by the Debtor against Nestlé Waters North American, Inc. in arbitration pending in Chicago, IL,” which “remain[ed] unliquidated and ha[d] unknown value.”.B.R. 169, Pg. ID 3. And Mountain Glacier’s plan indicated that this arbitration claim would be transferred to the “Reorganized Debtor”—i.e., Mountain Glacier—upon the plan’s confirmation. B.R. 203, Pg. ID 8-9.
 

 Nestlé Waters says that res judi-cata bars Mountain Glacier’s attempt to restart the companies’ arbitration. See Browning v. Levy, 283 F.3d 761, 772 (6th Cir. 2002) (holding that res judicata can bar later litigation of reorganized debtors’ pre-existing legal claims). But, as all parties here recognize, res judicata does not apply if the debtor expressly retained an existing claim for post-bankruptcy litigation. Id. at 774. Section 1123(b)(3) of the Bankruptcy Code allows a debtor’s plan to provide for “the retention and enforcement by the debtor” of “any ... claim or interest.” 11 U.S.C. § 1123(b)(3). And a “claim” is defined to include a “right to payment,” even when that payment is “disputed.” Id. § 101(5)(A). Thus, a debtor who wishes to retain an existing claim for future litigation need only note the reservation of that claim in its plan. The statute requires nothing more. See, e.g., P.A. Bergner & Co. v. Bank One, Milwaukee, N.A. (In re P.A. Bergner & Co.), 140 F.3d 1111, 1117 (7th Cir. 1998) (“While there might be some logic in requiring ‘specific and unequivocal’ language to preserve claims belonging to the estate ..., the statute itself contains no such requirement.”).
 

 Nestlé Waters argues that this court’s opinion in Browning set out requirements more stringent than those in the Bankruptcy Code. Nestlé Waters is incorrect. As a preliminary matter, courts cannot add to statutes. Cf. Henson v. Santander Consumer USA Inc., — U.S. —, 137 S.Ct. 1718, 1725, 198 L.Ed.2d 177 (2017) (“[W]hile it is of course our job to apply faithfully the law Congress has written, it is never our job to rewrite a constitutionally valid statutory text under the banner of speculation about what Congress might have done .... ”). Legislating is for Congress, not the courts.
 

 Moreover, Browning did not set out the stringent requirements that Nestlé Waters reads into it. In Browning, we stated that “a general reservation of rights” is not sufficient to preserve the debtor’s claims. Browning, 283 F.3d at 774. But Browning does not require a debtor’s reservation of claims to name each (potential) defendant and state the factual basis for each (potential) cause of action, as Nestlé Waters contends. Any such suggestion by Browning was not part of its holding, but a mere statement of reasons for why the debtor’s blanket reservation in that case did not give sufficient notice to creditors. See id. at 775; Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 399, 5 L.Ed. 257 (1821) (noting that reasoning that goes “beyond the case ... may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision”). Rather what Browning held is that a debt- or’s reservation is sufficient so long as it enables creditors to (1) identify the claims (or potential claims) at issue and (2) evaluate whether those claims might provide additional assets for distribution. See Browning, 283 F.3d at 774-75; see also P.A. Bergner, 140 F.3d at 1117 (holding that the reservation of a claim need not name a defendant, but only identify the type of claim the debtor seeks to retain); Harstad v. First Am. Bank, 39 F.3d 898, 903 (8th Cir. 1994) (describing Section 1123(b)(3) as “a notice provision” intended to ensure creditors know about claims that might enlarge the estate).
 

 So the question is whether Mountain Glacier’s reservation enabled creditors to identify its claim and evaluate whether additional assets might be available for distribution. It did. There is no doubt that creditors could identify the claim: The reservation identified Mountain Glacier’s counterparty—Nestlé Waters—and indicated the forum—Chicago, Illinois. Creditors thus knew that there was an ongoing claim and a potential recovery. If creditors wanted more information, they could have objected to the reservation (or plan) and asked the bankruptcy court to require a more fulsome description. See D & K Props. Crystal Lake v. Mut. Life Ins. Co. of N.Y., 112 F.3d 257, 261 (7th Cir. 1997) (suggesting that a claim might be retained if a broad reservation was “explicit,” since creditors would have had the opportunity to “dicker over the language”). But no creditor did. And Nestlé Waters certainly had all the information it needed—after all, it was the other party in the arbitration. Ultimately, neither Browning nor the statute required Mountain Glacier to provide more information than it did. So neither will we.
 

 Nestlé Waters raises one more argument as to why Mountain Glacier’s reservation was not sufficient. The “Retention of Claims” section of Mountain Glacier’s plan purported to retain every “cause of action” that the company had the power to assert immediately before confirmation. B.R. 203, Pg. ID 10. The “Transfer of Assets” section, by contrast, purported to transfer Mountain Glacier’s “Causes of Action” to the reorganized debtor, which were explicitly defined in the disclosure statement to include the claim against Nestlé Waters. Id. at Pg. ID 8-9; B.R. 169, Pg. ID 3. Nestlé Waters says that the general “Retention of Claims” was insufficient, since it was a “blanket reservation” of the sort we rejected in Browning, and that we should now refuse to look to the definition of “Causes of Action” to find the requisite specificity. Why? Because while “Causes of Action” was capitalized in the transfer-of-assets section, “causes of action” in the retention-of-daims section was not. Nestlé Waters thus argues that the. two terms must have had different meanings.
 

 This argument need not detain us for long, since it fails for two straightforward reasons. First, even had the plan not included the retention-of-claims provision, the transfer-of-assets provision was itself sufficient to preserve Mountain Glacier’s claim. As discussed above, Section 1123(b)(3) does not require the debtor to intone any magic words. And the transfer-of-assets provision put creditors on notice of Mountain Glacier’s claim. Second, even if the retention-of-claims provision was essential to Mountain Glacier’s reservation, the lower-cased “causes of action” is most naturally read as encompassing the upper-cased “Causes of Action.” After all, Mountain Glacier’s retention-of-claims provision purported to retain “each and every ... cause of action whatsoever.” B.R. 203, Pg. ID 10. It would be strange indeed if that broad language included every cause of action except the specific ones the plan identified just a few paragraphs before. Thus, on any reading, Mountain Glacier’s plan was sufficient to retain its claim.
 

 We AFFIRM.