KETHLEDGE, Circuit Judge, dissenting.
DISSENT
In every case where an Article III court defers to the Executive's interpretation of a statute under Chevron , our constitutional separation of powers is surely disordered. That disorder, the Supreme Court has said, is constitutionally permissible. But it is disorder nonetheless. For whenever a federal court declares a statute ambiguous and then hands over to an executive agency the power to say what the statute means, the Executive exercises a power that the Constitution has assigned to a different branch.
One can conceive of this transfer in two ways. As Chevron itself conceives of it, the executive branch resolves the ambiguity by *525 exercising legislative power to define the statute's terms. 467 U.S. at 843-44, 104 S.Ct. 2778. Under that view, Chevron allows an executive agency to impose binding obligations upon our citizenry-which is to say, to legislate-through a process vastly less difficult and subject to democratic scrutiny than the legislative process prescribed in the Constitution. See U.S. Const. art. I, § 7. For where the Constitution requires the concurrence of the House, the Senate, and the President (or an overwhelming consensus in the House and Senate)-the approval, in other words, of every component of the elected branches- Chevron requires only the approval of a single agency head. Alternatively, Chevron effects an abdication of "[t]he judicial power" vested in Article III courts-as the judicial branch cedes to the Executive the "emphatic[ ] ... province and duty of the judicial department to say what the law is." U.S. Const. art. III, § 1 ; Marbury v. Madison , 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803). And under either conception of Chevron , the agency is free to expand or change the obligations upon our citizenry without any change in the statute's text. See Nat'l Cable & Telecomm. Assoc. v. Brand X Internet Servs. , 545 U.S. 967, 981-82, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005).
Under Chevron itself, courts should ensure that this disorder happens as rarely as it lawfully can. Chevron directs courts to exhaust all the "traditional tools of statutory construction"-and there are many of them-before surrendering to some putative ambiguity and thereby allowing the Executive to exercise power belonging to another branch. See 467 U.S. at 843 n.9, 104 S.Ct. 2778. For just as the separation of powers "safeguard[s] individual liberty," N.L.R.B. v. Noel Canning , 573 U.S. 513, 525, 134 S.Ct. 2550, 189 L.Ed.2d 538 (2014), so too the consolidation of power in the Executive plainly threatens it. In short, an Article III court should not defer to an executive agency's pronouncement of "what the law is" unless the court has exhaustively demonstrated-and not just recited-that every judicial tool has failed.
But that is hardly what happens in reality. Instead, the federal courts have become habituated to defer to the interpretive views of executive agencies, not as a matter of last resort but first. In too many cases, courts do so almost reflexively, as if doing so were somehow a virtue, or an act of judicial restraint-as if our duty were to facilitate violations of the separation of powers rather than prevent them.
In this case, respectfully, the tools of statutory construction are hardly employed. Rather than analyze the interpretive issue, the majority merely frames it. And the agency's interpretation-now the law of our circuit-construes the words of the statute in a manner that no ordinary speaker of the English language would recognize. (Agencies are experts at policy, but not necessarily at statutory interpretation.) Meanwhile, the majority overlooks more case-specific grounds on which Valent is entitled to relief.
I.
The question presented by this case is whether the Social Security Act authorized the Commissioner to sanction Valent for her failure to report her "work activity." The Act allows the Commissioner to impose certain penalties and assessments for each instance in which a person "omits from a statement or representation ... or otherwise withholds disclosure of, a fact which the person knows or should know is material to the determination of any initial or continuing right" to disability insurance benefits. 42 U.S.C. § 1320a-8(a)(1)(C). To impose a penalty and assessment, the Commissioner bears the burden of proving *526 three elements: first, that a person failed to disclose a "material fact"; second, that the person had reason to know the fact was "material"; and third, that the person had reason to know that failure to disclose the fact was "misleading" to the agency. Id. ; 20 C.F.R. § 498.215(b)(2). A fact is "material" if the Commissioner of Social Security "may consider" it when "evaluating whether an applicant is entitled to benefits[.]" 42 U.S.C. § 1320a-8(a)(2).
The Commissioner imposed the assessment and penalty (hereinafter, "the sanction") against Valent based solely on her failure to disclose her "work activity" at the Alliance. R. 18 at 835; see also R. 18 at 119. Valent argues that her work activity could not be "material" because the Commissioner could not use it as evidence against her. Section § 421(m)(1)(B) provides in relevant part:
(m) Work activity as basis for review
(1) In any case where an individual entitled to disability insurance benefits ... has received such benefits for at least 24 months-
...
(B) no work activity engaged in by the individual may be used as evidence that the individual is no longer disabled[.]
42 U.S.C. § 421(m)(1)(B) (emphasis added). The Commissioner may terminate benefits, however, if the beneficiary "has earnings " that exceed an amount "established by the Commissioner to represent substantial gainful activity." Id. § 421(m)(2)(B) (emphasis added). The question, then, is whether the Commissioner could "consider" Valent's work activity when determining whether she remained "entitled to benefits"-in which case her work activity would be "material[,]" id. § 1320a-8(a)(2)-even though her work activity may not "be used as evidence" that she was "no longer disabled." Id. § 421(m)(1)(B).
As an initial matter, the majority repeatedly misstates the basis on which the Commissioner imposed the sanction at issue here. The Commissioner did not, as the majority recites throughout its opinion, impose the sanction based on Valent's failure to report "work activity that generates earnings " or "work activity that generates profit or pay [.]" Maj. Op. at 520, 522 (emphasis added). That characterization distorts the question presented by blending a fact that the agency may use as evidence against a beneficiary (i.e. , her earnings) with a fact the agency may not (i.e. , her work activity). Instead, the Commissioner imposed the sanction based solely on Valent's failure to report "work activity" period -without regard to whether she received any earnings from that activity. For example, the ALJ on remand noted: "It is important to recognize that the [Inspector General] did not charge [Valent] with failure to report earnings or failure to report substantial gainful activity, both of which are material facts. The [IG] cited failure to report work activity as the basis for the [sanction.]" R. 18 at 124 (emphasis added). The Board likewise wrote that the Inspector General had proposed the sanction for Valent's "failure to disclose that she had worked while receiving [benefits.]" R. 18 at 10. The Commissioner's brief to this court likewise recited that Valent had "withheld information that she was engaged in work activity while receiving disability benefits." Comm'r Br. at 21. True, as the majority points out, the IG's letter to Valent recited that she had received a stipend from her brother in exchange for her work activity. But the fact remains that the Commissioner's stated basis for imposing the sanction was solely her work activity. The Commissioner's counsel expressly conceded the point at oral argument:
*527 COURT: As I understand the record here, the Commissioner sought this penalty and repayment of benefits solely on the ground of her failure to disclose work activity, not substantial gainful or earnings.
GOVERNMENT: That's correct.
COURT: Why in the world did the Commissioner do that?
GOVERNMENT: I don't know.
Oral Arg. at 28:02.
Working from this mistaken understanding of the basis for the Commissioner's action, the majority then says that the statute is ambiguous because §§ 421(m)(1)(B) and (2)(B)"appear to conflict with one another." Maj. Op. at 520. That two provisions appear to conflict, however, does not mean they are ambiguous. Instead that means we must use all the tools of statutory construction, if at all possible, to interpret the statute as "an harmonious whole." FDA v. Brown & Williamson Tobacco Corp ., 529 U.S. 120, 133, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000) (internal quotation marks omitted). That does not happen here: the majority instead goes on to say that it disagrees with the Second Circuit's reading of this statute, and that "another circuit's differing interpretation of the very statute at issue is evidence of ambiguity in the statutory scheme." Maj. Op. at 521. In Chevron cases especially, that assertion cannot be right: that two circuits disagree as to the interpretation of a statute does not mean the Executive gets to interpret it. Sometimes one of the circuit courts is simply wrong. That is why we have a Supreme Court; and that Court, not the Executive, is the arbiter of circuit splits.
More to the point, on the basis of a conclusory statement about the two provisions at issue, and the mere fact of another court's conflicting decision, the majority moves past Chevron 's "step one" and allows the Executive to assume the judicial role. A court more vigilant about the constitutional separation of powers might instead observe that the verbs in the operative provisions here are different: section 421(m)(1)(B) says that a beneficiary's work activity may not be "used as evidence that [she] is no longer disabled," id. (emphasis added)-potentially a relatively narrow proscription-whereas § 1320a-8(a)(2) says that a fact is "material" if the Commissioner may "consider " it when "evaluating whether an applicant is entitled to benefits." Id. (emphasis added). Different words in statutes usually have different meanings. See Henson v. Santander Consumer U.S.A., Inc. , --- U.S. ----, 137 S.Ct. 1718, 1723, 198 L.Ed.2d 177 (2017). And just as in civil cases a party is entitled to obtain evidence that might be excluded on any number of grounds from admission at trial, see Fed. R. Civ. P. 26(b)(1), Fed. R. Evid. 402, so too might the Commissioner be able to "consider" facts that "may not be used as evidence" in determining disability. Or-to take the majority's putative conflict between §§ 421(m)(1)(B) and (2)(B) head-on-perhaps the agency can terminate benefits based on the beneficiary's "earnings" (which is permitted under § 421(m)(2)(B) ) without using her "work activity" as evidence against her (which is proscribed by § 421(m)(1)(B) ). (That the agency has elsewhere defined "substantial gainful activity" as used in § 421(m)(2)(B) to include "work activity" does not mean that the two provisions conflict. For if a court can construe the two provisions as "an harmonious whole," then the agency's conflicting interpretation must yield. Brown & Williamson Tobacco Corp ., 529 U.S. at 133, 120 S.Ct. 1291 (internal quotation marks omitted).) But the majority exhausts none of these possibilities before ceding the judicial role.
*528 The interpretation to which the majority then defers is almost a test case for how far an agency can go in Chevron 's "step two." Specifically, the agency notes that § 421(m)(1)(B) includes the phrase "no longer disabled[,]" and that, in the agency's paraphrase, disability as defined by 42 U.S.C. § 423(d)(1)(A)"has both a vocational and a medical component." Comm'r Br. at 24. The agency then asserts that "it is not clear whether section 421(m)(1)(B) precludes the Commissioner from using 'work activity' to determine whether a beneficiary" meets the "medical" component of disability, or the "vocational" component, "or both." Comm'r Br. at 25. From there the agency submits-as an interpretation to which the majority defers-that it can consider "work activity" for purposes of the "vocational" component of disability, but not the "medical" component. But of course the statute is "clear" on what it "precludes": section 421(m)(1)(B) says the Commissioner may not use a beneficiary's work activity as evidence that she is not "disabled" simpliciter , which means the agency cannot use a beneficiary's work activity as evidence for any part of a determination that she is not disabled. Nothing about that proscription is ambiguous. What the agency proposes here is not interpretation of a statute, but amputation, by which the agency (and now our court) discards roughly half the protection that Congress unambiguously provided to beneficiaries in § 421(m)(1)(B). The agency has not carried its burden to show that Valent's work activity was material within the meaning of § 1320a-8(a)(2).
II.
Valent is also entitled to relief for a simpler reason: the agency has failed to show that she knew or had reason to know that her work activity was material. The majority finds this element of the sanction met for the same reason the Board did in its second decision: that (in their view) an agency regulation required her to report her work activity. See Maj. Op. at 523 (citing 20 C.F.R. 404.1588(a) ). But the majority overlooks that the Board itself expressly rejected this very position in its first decision below, when the Board held that this same regulation was "relevant" but "not determinative" of the question whether Valent knew or had reason to know that her work activity was material. R. 18 at 240.
Under the Administrative Procedure Act, we set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under that rule, "[a]gencies are free to change their existing policies[,]" but an agency "must at least display awareness that it is changing position and show that there are good reasons" for the change. Encino Motorcars, LLC v. Navarro , --- U.S. ----, 136 S.Ct. 2117, 2125-26, 195 L.Ed.2d 382 (2016) (internal quotation marks omitted). An "unexplained inconsistency in agency policy[,]" in contrast, is reason to find it arbitrary and capricious. Id . (internal quotation marks omitted). Here, neither the agency in its brief in this appeal, nor the Board in its second decision, has offered any explanation as to why the Board's position in its first decision was wrong. And yet-in conflict with that position-the Board has proceeded to impose a sanction exceeding $100,000. On this record, therefore, the agency's determination as to this element was arbitrary and capricious.
Finally, a more pertinent regulation-unmentioned by the Commissioner in her brief-seriously undermines the agency's position here. Specifically, in response to the enactment of § 421(m), the Commissioner promulgated a regulation, entitled "How we will determine whether your disability *529 continues or ends." See 20 C.F.R. § 404.1594. This regulation assures beneficiaries as follows:
If you are currently entitled to disability insurance benefits as a disabled worker ... and at the time we are making a determination on your case you have received such benefits for at least 24 months, we will not consider the activities you perform in the work you are doing or have done during your current period of entitlement based on disability if they support a finding that your disability has ended.
20 C.F.R. § 404.1594(i)(2) (emphasis added). The reason for this regulation, as the agency explained it, was simple: "we [have] concluded that there is no other permissible interpretation of the language of section [4]21(m)(1)(B)." 71 Fed. Reg. 66,850 (Nov. 17, 2006). Thus, in this regulation-which by its terms ("you") speaks directly to the beneficiary-the agency interprets the proscription against "use[ ]" of work activity in § 421(m)(1)(B) to mean that the agency cannot "consider" that activity to "support a finding that your disability has ended." See 20 C.F.R. § 404.1594(i)(2). And that quite possibly amounts to an assurance to the beneficiary herself that her work activity was not material. See 42 U.S.C. § 1320a-8(a)(2).
I respectfully dissent.