NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0159n.06

No. 20-3538

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Mar 25, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JENNIFER WILLISON, | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| NELNET, INC., | ) | |
| | ) | **OPINION** |
| **Defendant-Appellee.** | ) | |
| | ) | |

Before: DAUGHTREY, MOORE, and THAPAR, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** This case reaffirms the trite but still true aphorism: timing is everything. Plaintiff Jennifer Willison alleges that Defendant Nelnet, a company that facilitates the repayment of student loans, violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., after it acquired Willison's student loans for servicing. The resolution of this case turns on the status of Willison's loans when Nelnet acquired them. Because Willison's loans were not in default at the time Nelnet acquired her loans, Nelnet was not a debt collector for purposes of the FDCPA, and all of Willison's claims under the FDCPA must fail. Thus, we **AFFIRM** the district court's grant of summary judgment in favor of Nelnet.

**I. BACKGROUND**

Some time ago, Willison took out student loans to finance her education. R. 1-1 (Letter to Nelnet at 1) (Page ID #31). Unfortunately, in 2016, Willison fell behind on her payments, and her loans went into default. R. 12 (Loan Detail at 2) (Page ID #115). To remove her loans from

default status, Willison entered into a "Rehabilitation Agreement" with Performant Recovery, Inc. R. 1-2 (Rehabilitation Agreement) (Page ID #38). The agreement required Willison to make monthly payments of no less than five dollars until she received a notification "that [her] loan(s) ha[d] been sold to a participating rehabilitation lender." *Id*. The loans would be removed from default status once the sale to a rehabilitation lender was completed. *Id*. Willison made the required payments. R. 2-2 (Payment History at 1) (Page ID #66). Then on February 15, 2017, Deutsche Bank, the lender at the time, sold the loans to SunTrust Bank, and the status of the loans changed from default to being in repayment. R. 12 (Loan Detail at 2) (Page ID #115). That same day, Nelnet became the new servicer for the loans. *Id*.

In keeping with its responsibility as servicer for the loans, Nelnet sent Willison a letter detailing her account balance and repayment schedule. R. 2-3 (Status Change Letter at 1) (Page 1) (Page ID #68). Upon receiving the letter, Willison became concerned about the account balance; in particular, she believed that Nelnet improperly added $4,000 to $5,000 to the balance of the loan. R. 1-1 (Letter to Nelnet at 1) (Page ID #31). So, Willison obtained counsel, who sent a letter to Nelnet inquiring about this issue and requesting that Nelnet send all further correspondence to counsel. *Id*. Nelnet sent its response to Willison, instead of to her counsel, and requested Willison's permission to release her account information to her attorney, a third party. R. 1-2 (Nelnet Response Letter) (Page ID #36).

In turn, Willison filed a complaint in federal court against Nelnet, alleging that (1) Nelnet's direct communication with Willison after receiving notice that all correspondence should be directed to her counsel and (2) its misrepresentation of her account balance violated the FDCPA. Nelnet filed a motion to dismiss, or in the alternative, a motion for summary judgment. Both

parties consented to a magistrate judge conducting the proceedings pursuant to 28 U.S.C. § 636(c). R. 9 (Mag. J. Referral Order) (Page ID #99). The magistrate judge found that both parties relied on evidence outside of the pleadings and determined that Nelnet's motion should be treated as a motion for summary judgment. R. 11 (Order) (Page ID #103). After allowing both parties the opportunity to submit additional evidence, the magistrate judge granted summary judgment in favor of Nelnet. *Willison v. Nelnet, Inc.*, No. 2:19-cv-3603, 2020 WL 1914810 (S.D. Ohio Apr. 20, 2020). Willison appealed.

## II.  DISCUSSION

### A.  Standard of Review

We review a grant of summary judgment de novo. *Mazur v. Young*, 507 F.3d 1013, 1016 (6th Cir. 2007). "In deciding a motion for summary judgment, this court views the factual evidence and draws all reasonable inferences in favor of the non-moving party." *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 591–92 (6th Cir. 2001). We will uphold a grant of summary judgment only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B.  Analysis

Willison argues that the district court erroneously found that Nelnet is not a "debt collector" for purposes of FDCPA liability. Congress enacted the FDCPA to protect consumers from and to eliminate "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a), (b), (e). For Nelnet to be liable for any alleged violations of the FDCPA, Willison must show that Nelnet

is a "debt collector" as defined by the Act. *Kistner v. Law Offs. of Michael P. Margelefsky, LLC*, 518 F.3d 433, 435–36 (6th Cir. 2008).

Under the FDCPA, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). However, the FDCPA also provides for several exceptions, one of which is relevant here. If the debt at issue "was not in default at the time it was obtained," then a person collecting or attempting to collect such debt does not qualify as a "debt collector." *Id.* at § 1692a(6)(F)(iii). Loan servicers, although they do not technically own loans, do not fall outside of the FDCPA's ambit. We have held that "a loan servicer . . . can . . . become a debt collector, depending on whether the debt was assigned for servicing before the default or alleged default occurred." *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106–08 (6th Cir. 1996) (holding that even if a defendant did not own the loan it was servicing, the defendant "would be exempted from the definition of a debt collector . . . because its activity 'concern[ed]' a debt that was 'not in default' at the time [it] obtained the debt for servicing"); *see also Henson v. Santander Consumer USA, Inc.*, 137 S. Ct. 1718, 1723 (2017) (noting that an entity can "take possession of a debt for servicing and collection even while the debt formally remains owed another"). Willison alleges that her debts were in default when Nelnet obtained them for servicing. Nelnet contends otherwise. We agree with Nelnet.

Uncontradicted evidence clearly shows that Nelnet obtained Willison's loans for servicing after they were no longer in default. Willison participated in the Rehabilitation Agreement, which

provided that her loans' status would change from default to being in repayment after a rehabilitation lender purchased the loans from the current lender. The record reflects that SunTrust Bank purchased the loans from Deutsche Bank on February 15, 2017. R. 12 (Loan Detail at 2) (Page ID #115). After completion of the sale, the loans were no longer in default. *Id.* Subsequently, SunTrust Bank transferred the loans to Nelnet for servicing that same day. *Id.* Consequently, Nelnet obtained the loans for servicing when the loans were no longer in default. Other record evidence bolsters this conclusion. *See* R. 2-1 (Koerperich Decl. at 2) (Page ID #65) (explaining that Nelnet "only services current loans and does not service loans in default").

Willison takes issue with this process and asserts that it is a "default washing operation which purports to restore a defaulted loan to a non-defaulted status." Appellant Br. at 9. However, if it is an "operation," it is one set up and regulated by the Department of Education. Recognizing that a concerning amount of federal student loan borrowers at some point default, the Department of Education requires all guarantors of loans held under the Federal Family Education Loan Program ("FFELP") to "establish a loan rehabilitation program for all borrowers . . . for the purpose of rehabilitating defaulted loans, . . . so that the loan may be purchased . . . by an eligible lender and removed from default status." 34 C.F.R. § 682.405(a)(1). Willison's loans were consolidated under the FFELP. *See* R. 1-2 (FFELP Application at 1–2) (Page ID #39–40). And Willison's Rehabilitation Agreement appears designed to satisfy all the requirements set out in the Department of Education's regulation. *Compare* R. 1-2 (Rehabilitation Agreement) (Page ID #38), *with* 34 C.F.R. § 682.405(a), (b) (2016). Once Willison met the terms of the agreement and the loan was sold, her loans exited default through rehabilitation and "return[ed] to [a] normal repayment" schedule. *Id.* at § 682.405(a)(2), (b)(1)(vi)(A). Thus, when SunTrust Bank assigned

the loans to Nelnet for servicing, neither the Department of Education, the guaranty agency, nor the lender considered the loans to be in default. As fortuitous as the timing may be, the result of the rehabilitation process is that Nelnet does not fall within the definition of a "debt collector" under the FDCPA. Accordingly, Willison's claims must fail.

We also have held that "the definition of debt collector pursuant to § 1692a(6)(F)(iii) includes any non-originating debt holder that either acquired a debt in default *or* has treated the debt as if it were in default at the time of acquisition." *Bridge*, 681 F.3d at 362 (emphasis added).[1] Willison does not argue that Nelnet treated her loans as if they were in default at the time Nelnet acquired her loans. And, as the magistrate judge noted, nothing in the record demonstrates that Nelnet treated the loans as if they were in default when Nelnet first acquired them. *Willison*, 2020 WL 1914810, at *4. So that path to liability also is foreclosed.

### III. CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's grant of summary judgment.

---

[1]We note that this definition has been limited in whole or in part by the Supreme Court's decision in *Santander*. 137 S. Ct. at 1720–22 (holding that "individuals and entities who regularly purchase debts originated by someone else and then seek to collect those debts for their own account" do not fall under the FDCPA's statutory definition of a "debt collector" being "anyone who 'regularly collects or attempts to collect . . . debts owed or due . . . another'" even if the purchased debt was already in default). However, *Santander* did not discuss what impact, if any, its ruling had on a loan servicer who services a defaulted debt purchased by a non-originating debt holder. Thus, it does not affect the resolution of this case.