# SUPREME COURT OF THE UNITED STATES

## LANCE SHOCKLEY *v.* DAVID VANDERGRIFF, WARDEN

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

No. 24–517.　Decided March 31, 2025

The petition for a writ of certiorari is denied.

JUSTICE SOTOMAYOR, with whom JUSTICE JACKSON joins, dissenting from the denial of certiorari.

A prisoner who seeks to appeal the denial of his petition for habeas corpus may do so only if "a circuit justice or judge issues a certificate of appealability." 28 U. S. C. §2253(c)(1). Several Circuits have interpreted that requirement to mean that a certificate must issue so long as "one of the judges to whom the application was referred" votes to grant it. *Thomas* v. *United States*, 328 F. 3d 305, 309 (CA7 2003); Rule 22.3 (CA3 2011) (similar language); Rule 22(a)(3) (CA4 2023) (same, explaining that "the authority for a single judge to issue a certificate derives from §2253"); Gen. Order 6.3(b) (CA9 2024) ("Pursuant to 28 U. S. C. §2253(c), a request to grant or expand a certificate of appealability may be granted by any one Judge on the assigned panel"). In some courts, however, a panel majority can deny a certificate even if "a circuit . . . judge" on the panel votes to issue one. See, *e.g.*, *Williams* v. *Kelley*, 858 F. 3d 464 (CA8 2017); *Crutsinger* v. *Davis*, 929 F. 3d 259 (CA5 2019); *United States* v. *Ellis*, 779 Fed. Appx. 570 (CA10 2019). That latter practice deprived petitioner Lance Shockley of an appeal in this case.

I would have granted certiorari to resolve the split and decide whether the Courts of Appeal can dismiss an appeal after a judge votes to grant a certificate.

I

After the District Court denied Lance Shockley's habeas petition, Shockley sought the Eighth Circuit's permission to appeal. Judge Kelly voted to grant a certificate as to one of Shockley's claims, but two other judges voted to deny. App. to Pet. for Cert. 2a. In the Third, Fourth, Seventh, and Ninth Circuits, that vote would have meant Shockley's appeal could proceed. Yet the Eighth Circuit dismissed the appeal, even over the dissent of two judges who would have granted rehearing en banc. See *id.*, at 350a.

Allowing a panel of judges to deny a certificate of appealability over a dissenting vote has significant consequences. At the certificate of appealability stage, briefing is confined to less than half the word limit of an ordinary appeal, and oral argument is presumptively denied. See Fed. Rules App. Proc. 27(d)(2) (5,200 word limit for motions), 27(e) (motions decided without oral argument unless ordered otherwise), and 28.1(e)(2) (13,000 word limit for principal brief on appeal). In that limited space, applicants must focus on establishing that their claim meets the plausibility standard for granting a certificate, rather than showing the claim is ultimately meritorious. Moreover, the grant of a certificate of appealability often marks the appointment of counsel, so its denial generally deprives indigent litigants of the opportunity for a counseled appeal. See, *e.g.*, Internal Operating Proc. 10.3.2 (CA3 2018) ("When a certificate of appealability is granted on behalf of an indigent appellant . . . the clerk appoints counsel for the appellant unless the court instructs otherwise"); Rule 22(a) (CA4) (discussing appointment of counsel after grant of certificate).

There are good reasons to think that Congress conditioned the right to an appeal on a single judge's vote. Congress normally provides that cases must be resolved by "[a] majority of the number of judges authorized to constitute a court or panel thereof," 28 U. S. C. §46(d), or by the appropriate "court of appeals," see *e.g.*, §§2349(b), 2342. It could

have used the same language in the habeas statute, permitting an appeal where the court of appeals grants a certificate. Instead, Congress specified that "a circuit justice or judge" can grant permission to appeal. §2253(c)(1); see also *Miller-El* v. *Cockrell*, 537 U. S. 322, 335–336 (2003) ("Before an appeal may be entertained, a prisoner who was denied habeas relief in the district court must first seek and obtain a COA from a circuit justice or judge"); *id.*, at 349 (SCALIA, J., concurring) (noting that a "circuit justice or judge" determines whether to grant a certificate of appealability); *Buck* v. *Davis*, 580 U. S. 100, 115 (2017) (same). Because "our cases begin (and often end) with the presumption that Congress is careful in all its word choices," *Pulsifer* v. *United States*, 601 U. S. 124, 172 (2024) (GORSUCH, J., dissenting), "[w]e usually 'presume differences in language like this convey differences in meaning.'" *Wisconsin Central Ltd.* v. *United States*, 585 U. S. 274, 279 (2018) (quoting *Henson* v. *Santander Consumer USA Inc.*, 582 U. S. 79, 86 (2017)).

Allowing an appeal whenever one judge votes to grant a certificate also reflects the substantive standard that governs habeas appeals. After all, a certificate must issue so long as "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were '"adequate to deserve encouragement to proceed further."'" *Slack* v. *McDaniel*, 529 U. S. 473, 484 (2000) (quoting *Barefoot* v. *Estelle*, 463 U. S. 880, 893, and n. 4 (1983)). When one or more jurists believes a claim has sufficient merit to proceed, that itself "might be thought to indicate that reasonable minds could differ . . . on the resolution" of the relevant claim. *Johnson* v. *Vandergriff*, 600 U. S. \_\_\_, \_\_\_ (2023) (SOTOMAYOR, J., dissenting from denial of application for stay and denial of certiorari) (slip op., at 5) (internal quotation marks omitted). Congress may well have conditioned the right to an appeal on the vote of a "circuit justice or judge" for that reason. 28 U. S. C. §2253(c)(1).

Proceeding to the merits with a full panel after a judge votes to grant a certificate also promotes efficiency. Because appeals should proceed so long as they present a debatable issue, the question whether to grant a certificate should not be a contentious one. See *Buck*, 580 U. S., at 122; *Miller-El*, 537 U. S., at 336; *Slack*, 529 U. S., at 484. Indeed, a petitioner need not even prove "that some jurists would grant the petition for habeas corpus." *Miller-El*, 537 U. S., at 338. When a petition for certificate of appealability is sufficiently weighty to engender split opinions and even en banc litigation, as it did here, judicial resources are better spent simply considering the merits in the regular course. In order to maintain the "public perception of fairness and integrity in the justice system," moreover, courts must "exhibit regard for fundamental rights and respect for prisoners 'as people.'" *Rosales-Mireles* v. *United States*, 585 U. S. 129, 139–140 (2018) (quoting T. Tyler, Why People Obey the Law 164 (2006)). That requires considering debatable constitutional claims on their merits, rather than dismissing them out of hand.

## II

This case exemplifies the problems with the Eighth Circuit's contrary approach. Consider briefly the basis for Shockley's claim. A Missouri jury convicted Shockley for the capital murder of a police officer. The prosecution argued Shockley committed the murder because the officer had been investigating Shockley's role in a drunken-driving incident that resulted in the death of Shockley's sister-in-law's fiancé. During *voir dire*, a venire member volunteered that he had authored and self-published a book. Neither the court nor Shockley's counsel followed up on that comment, and the venire member became the jury's foreperson.

Shockley's lawyer did not discover until after the jury returned a guilty verdict why the foreperson had thought his authorship relevant. As it turned out, the book in question

was a "fictionalized autobiography" describing the "brutal and graphic revenge murder of a defendant who killed the protagonist's wife in a drunken-driving accident." *Shockley* v. *State*, 579 S. W. 3d 881, 893 (Mo. 2019). The book's protagonist (a "fictionalized" version of the juror himself) "viewed the defendant as escaping justice in the court system because the defendant received only probation following his conviction." *Ibid.* During the guilt-phase of Shockley's trial, the foreperson brought this book to deliberations and handed it out to several jurors.

When, after the guilty verdict, Shockley moved for a mistrial, the trial court offered counsel the opportunity to take testimony from the foreperson and from other jurors. See *State* v. *Shockley*, 410 S. W. 3d 179, 201 (Mo. 2013) (concluding, on direct appeal, that the court "offered to allow jurors to be questioned or subpoenaed" for the mistrial hearing). Inexplicably, Shockley's lawyer "[n]ot only did . . . not accept this opportunity [but] affirmatively declined to call any witnesses." *Ibid.* As a result, the trial court did not hear evidence regarding the foreperson's alleged bias and misconduct or its effect on other jurors, *ibid.*, some of whom later indicated that they had looked through the book. Accordingly, while the trial court removed the foreperson for the sentencing phase, there was no mistrial and the jury's guilt-phase verdict stood. The jury thereafter deadlocked on Shockley's sentence, and the court imposed a sentence of death. The Missouri Supreme Court affirmed, explaining that Shockley could not "claim . . . the trial court committed plain error in failing to hold . . . a hearing and itself subpoena jurors as witnesses over defense counsel's statement that he did not want such witnesses." *Ibid.*

When Shockley later created a postconviction record establishing the nature of the foreperson's book and his conduct during deliberations, the Missouri Supreme Court held that counsel had not been ineffective. 579 S. W. 3d, at 897–898. Judge Stith dissented, emphasizing that counsel

had proffered no "valid strategic reason" for refusing to call witnesses at the mistrial hearing. *Id.*, at 921.

It is difficult to see how an attorney's decision not to call witnesses in support of a credible mistrial motion, when invited to do so by the presiding judge in a capital murder trial, could fail to constitute ineffective assistance of counsel under *Strickland* v. *Washington*, 466 U. S. 668 (1984). More importantly, reasonable jurists could obviously debate the merits of Shockley's claim, as they have done at the Missouri Supreme Court, the Eighth Circuit, and now this Court as well. The Court of Appeals plainly erred when, over multiple dissents, it treated as not even debatable the District Court's denial of relief on Shockley's ineffective-assistance claim. Had the Court instead followed the approach taken in the Third, Fourth, Seventh, and Ninth Circuits, that error would have been avoided.

*       *       *

This case raises an entrenched Circuit split over an important question of statutory interpretation: Can a certificate of appealability be denied notwithstanding a circuit judge's vote to grant it? Unfortunately, the Court leaves the issue for another day. The Courts of Appeal, however, remain free to reconsider their operating rules and align them with the text and purpose of §2253.