

I N  T H E

# Court of Appeals of Indiana

Rock Creek Capital, LLC,

*Appellant-Defendant*

v.

Brianna Tibbett,

*Appellee-Plaintiff*



FILED

Mar 13 2024, 9:00 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

---

March 13, 2024

Court of Appeals Case No.
23A-CC-531

Appeal from the White Circuit Court

The Honorable Jason A. Thompson, Judge

Trial Court Cause No.
91C01-2009-CC-222

---

**Opinion by Judge Brown**
Judges Tavitas and Foley concur.

**Brown, Judge.**

[1] Rock Creek Capital, LLC, ("Rock Creek") appeals the entry of partial summary judgment in favor of Brianna Tibbett. We affirm.

**Facts and Procedural History**

[2] On September 10, 2020, Rock Creek filed a complaint alleging it was a foreign limited liability company registered with the Indiana Secretary of State and Tibbett had enrolled as a student in a medical assistant education program with Ross Education, LLC, agreed to pay tuition of $15,740 for the program, had a balance due of $7,558, and had breached her contractual obligations. Rock Creek requested judgment in the amount of $7,558. On November 11, 2020, Tibbett filed an answer to the complaint disputing the debt and alleging fraud, waiver, a lack of consideration, and failure to mitigate damages.

[3] On December 6, 2020, Tibbett filed a motion for summary judgment alleging that she did not owe Rock Creek, Rock Creek lacked standing to collect any debt from her, and Rock Creek had no evidence that it owned any account or alleged debt. On December 24, 2020, Rock Creek filed a response to Tibbett's motion and a motion for summary judgment. On April 9, 2021, the court entered an order denying the motions for summary judgment.

[4] Meanwhile, on March 1, 2021, Tibbett filed a motion for leave to file a counterclaim alleging in part that "it seems apparent that Rock Creek is not licensed and as such, is continuing to engage in illegal conduct." Appellant's Appendix Volume III at 85. On April 19, 2021, the court entered an order

granting Tibbett's motion. On April 20, 2021, Tibbett filed a Counterclaim and Class Action which asserted in part that, "[a]s to [her] argument that Rock Creek is not licensed to collect consumer debt in Indiana, which is a deceptive act and fatal to its efforts to collect[,] Rock Creek represented to the Court that it was the incorrect time to raise the defense and that it was without merit." *Id.* at 99. Tibbett alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, violations of the Indiana Deceptive Consumer Sales Act, negligence, and fraud, and requested injunctive/declaratory relief. Specifically, Tibbett alleged: Count I, "violation of 15 U.S.C. § 1692e"; Count II, "violation of 15 U.S.C. § 1692f"; Count III, "violation of 15 U.S.C. § 1692d"; Count IV, violation of Indiana's Deceptive Consumer Sales Act; "Count IV,"[1] negligence; Count V, fraud; and Count VI, injunctive/declaratory relief. *Id.* at 99-102 (capitalization omitted). Under Count I, "violation of 15 U.S.C. § 1692e," Tibbett alleged that Rock Creek violated the FDCPA in part by making false, deceptive, and misleading representations including the amount and legal status of a debt, "threatening to take action that cannot be taken," "falsely representing that assignment could not be challenged," "representing that [she] engaged in perjury," "failing to disclose its unlicensed status," "implicitly representing State authority," and "making false statements to attempt to collect debt." *Id.* at 99 (some capitalization omitted). Under Count IV, violation of the Indiana Deceptive

---

[1] Tibbett included two counts titled as "Count IV." *See* Appellant's Appendix Volume III at 100-101.

Consumer Sales Act, she cited Ind. Code § 24-5-0.5-3(a) and alleged Rock Creek committed unfair and deceptive acts including by "[a]ttempting to collect when Rock Creek was not legally entitled to collect" and "[f]iling a lawsuit against [her] and members of the class when Rock Creek was not legally entitled to collect." *Id.* at 101 (some capitalization omitted). She also alleged that "Rock Creek's conduct and/or omissions were part of a scheme, artifice, or device with intent to defraud or mislead." *Id.* Under Count IV, "negligence," Tibbett asserted that Rock Creek had a duty "not to collect without a license." *Id.* (some capitalization omitted). Under Count VI, "injunctive/declaratory relief," Tibbett asserted that "Rock Creek should not be attempting to collect, or notifying such consumers that they are responsible for, money that as an unlicensed debt buyer, Rock Creek is legally permitted [sic]" and it "must return all proceeds it has obtained from any judgments or other unlicensed collection efforts against Ms. Tibbett and the Class." *Id.* at 102 (some capitalization omitted).

[5] On June 9, 2021, Rock Creek filed an answer and affirmative defenses to Tibbett's counterclaim. Rock Creek both admitted and denied that it was a debt collector as defined under the FDCPA and that it retained the services of licensed agencies and attorneys to collect only on accounts that are valid, due, and owing.[2] In its answers to the factual allegations, Rock Creek denied

---

[2] In her April 20, 2021 Counterclaim and Class Action alleging violations of the FDCPA, Tibbett alleged:

"falsely representing that it had the legal right to collect the debt from Tibbett" and asserted that, "[t]o the contrary, [it] possessed the legal right to do so." *Id.* at 114. In its answer to Count VI, injunctive/declaratory relief, it stated: "Rock Creek denies that declaratory relief is available under the FDCPA or the [Indiana Deceptive Consumer Sales Act] for private litigants and further denies that any of the request[ed] relief is appropriate in the absence of any violation of the law by Rock Creek." *Id.* at 118.

[6] On September 17, 2021, Rock Creek filed a motion for partial summary judgment asserting that it was "not a collection agency" as defined by Ind. Code § 25-11-1-1 of "the Indiana Collection Agency Act" and did not need a license to collect on the underlying debt. *Id.* at 128. Rock Creek attached a

---

> 24. Rock Creek is a collection company that, among other matters, contacts consumers in an attempt to collect alleged consumer debt.
>
> 25. Rock Creek regularly attempts to collect debt on behalf of others and debt that it allegedly acquires that is in default.
>
> * * * * *
>
> 31. Rock Creek is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

Appellant's Appendix Volume III at 97. In Rock Creek's June 9, 2021 answer, it asserted:

> 24. Admitted in part and denied in part. Rock Creek admits only that it is a debt collector as defined under the FDCPA and that it retains the services of licensed agencies and attorneys to collect only on accounts that are valid, due and owing. Except as otherwise admitted, Rock Creek denies the remaining allegations contained in this paragraph.
>
> 25. Admitted in part and denied in part. Rock Creek admits only that it is a debt collector as defined under the FDCPA and that it retains the services of licensed agencies and attorneys to collect only on accounts that are valid, due and owing. Except as otherwise admitted, Rock Creek denies the remaining allegations contained in this paragraph.
>
> * * * * *
>
> 31. Denied. Rock Creek denies the allegations in this paragraph as they constitute of [sic] conclusions of law. Rock Creek refers all questions of the law to the Court.

*Id.* at 111-112.

letter on letterhead for the Secretary of State of Indiana, dated July 19, 2021, addressed to "Amanda" from Nancy Musgrave, a senior compliance officer, which stated: "If they are collecting debt owed to their company on their own behalf they would not qualify as a collection agency. Collection agencies collect debts owed to others." *Id.* at 135. It also attached a document with the hyperlink of "https://securities.sos.in.gov/general-information/collection-agency/#:~:text=Under Indiana law%2C a collection,to be owed to another.&text=Collection agencies are also subject,Act ("FDCPA")" listed at the bottom, and which states under the heading "General Information": "Under Indiana law, a collection agency is any individual, firm, partnership, limited liability company, or corporation which seeks to collect claims owed or asserted to be owed to another." *Id.* at 145. Rock Creek requested "partial summary judgment determining that an Indiana license to collect on the underlying debt" was not required. *Id.* at 128.

[7] On October 18, 2021, Tibbett filed a response to Rock Creek's second motion for summary judgment. On October 23, 2021, Rock Creek filed a reply to Tibbett's response.

[8] On December 7, 2021, Judge Jason W. Thompson held a hearing. At one point, the court asked: "[A]s I get this, it all goes back to this collection license issue, is that right? Isn't that the only issue, partially, before the Court on the claim?" Transcript Volume II at 56. Tibbett's counsel answered affirmatively.

On January 18, 2022, Tibbett filed a "Notice Regarding Summary Judgment and Next Steps" in which she asserted that "[t]he sole issue pending before the Court's [sic] on Rock Creek's motion for summary judgment is whether Rock Creek is required to have a collection agency license" and "[m]ore specifically, does Rock Creek solicit claims for collection? The answer is yes." Appellant's Appendix Volume III at 240 (capitalization omitted). On January 19, 2022, Rock Creek filed a Motion to Strike Tibbett's January 18, 2022 notice. On January 26, 2022, the court entered an order scheduling a hearing for March 28, 2022, "for both sides to address the newly found evidence after the hearing on [Rock Creek's] Motion for Summary Judgment." Appellant's Appendix Volume IV at 3.

On March 7, 2022, Tibbett filed a "Supplemental Response to [Rock Creek's] Second Motion for Summary Judgment." *Id.* at 5. That same day, Rock Creek's counsel sent a letter to the court requesting that it disregard Tibbett's supplemental response.

On March 28, 2022, Senior Judge Robert W. Thacker presided over the hearing and noted that he was "sitting in for Judge Thompson." Transcript Volume II at 52. On March 31, 2022, Senior Judge Thacker entered an order denying Rock Creek's Motion to Strike and granting Rock Creek's motion for partial summary judgment. The court stated:

> [Rock Creek] may proceed on [its] complaint without a
> collection license. Indiana's licensing law does not apply to
> [Rock Creek] in this case. The Court finds that there are no

conflicting material facts on the issues presented on [Rock Creek's] Motion for Partial Summary Judgment herein and the facts and law are with [Rock Creek]. [Rock Creek] is seeking to collect a debt owed to [it], not seeking to collect a debt owed to others. (See I.C. 25-11-1-1, et. seq.)[.] [Rock Creek] is not a collection agency as defined by Indiana law. [Rock Creek] is not soliciting debts or claims for collection, but rather [Rock Creek] is in the business of buying debts or claims and then seeking to collect such debt or claim which debt or claim is owed directly to [Rock Creek]. The act of buying or purchasing such debt or claim for themselves and thereafter legally pursuing to collect or enforce such debt or claim does not cause [Rock Creek] to be a collection agency under Indiana law.

Appellant's Appendix Volume IV at 38.

[12] On April 19, 2022, Tibbett filed a "Motion to Correct Error or Alternatively, to Certify Interlocutory Appeal." *Id.* at 40 (capitalization omitted). On April 20, 2022, Rock Creek filed a Memorandum of Law in Support of Motion for Summary Judgment.

[13] On May 9, 2022, Senior Judge Thacker held a hearing. The next day he entered an order denying Tibbett's motion to correct error or to certify for an interlocutory appeal, and observed that there was a pending motion for summary judgment filed by Rock Creek on April 20, 2022.

[14] On June 7, 2022, Tibbett filed a "Combined Memorandum in Response to [Rock Creek's] Motion for Summary Judgment and Supporting [Tibbett's] Cross-Motion for Summary Judgment" which included a designation of evidence. Appellee's Appendix Volume V at 2 (capitalization omitted). Tibbett

argued that Rock Creek was a debt collector as defined by 15 U.S.C. § 1692a(6) and was a supplier under the Indiana Deceptive Consumer Sales Act. It asserted that Rock Creek "violated 15 U.S.C. § 1692f, f(1), § 1692e § 1692e, e(2)(A), e(10) and [Ind. Code §] 24-5-0.5-3 when it attempted to collect amounts not owed." *Id.* at 8. She also maintained her disagreement with the court's order finding that Rock Creek was not a collection agency and that it could collect without a license. She concluded that she was entitled to "partial summary judgment that the FDCPA foundational requirements (debt collector, debt, consumer) are met and that Rock Creek violated the FDCPA and [the Indiana Deceptive Consumer Sales Act]." *Id.* at 14.

[15] Tibbett designated a number of documents. Chad Welch indicated in his deposition that he was a manager at Rock Creek, which was incorporated in Wyoming and based in Texas, and that Rock Creek was licensed with the Indiana Secretary of State as a foreign entity, but he did not believe it was licensed as a collection agency. He indicated that Rock Creek had one other employee. He testified that he placed bids and attempted to purchase debt to obtain assets. He testified that his job was "[r]unning the company." *Id.* at 24. He indicated that Rock Creek purchases student loan debt as well as "other types of debt, but it's predominately student loans." *Id.* at 25. He testified that he understood that Tibbett received her personal education and her degree from Ross Education with funds from the loan at issue. He indicated Rock Creek sued seventy-one people in Indiana over the last few years. He testified "Rock Creek acquires defaulted receivables and portfolios" and does not lend money

to people. *Id.* at 32. He stated that "Rock Creek's business is buying defaulted receivables at a discount and trying to get those accounts to pay what . . . they owe." *Id.* at 34. He also testified Rock Creek was not licensed as a collection agency "because we don't . . . collect on any debt . . . and . . . we don't reach out to any consumers directly through Rock Creek" which is "done through our attorneys and third-party agencies and third-party attorneys." *Id.* at 55. When asked where Rock Creek did business, he answered: "Nationwide." *Id.* at 30.

[16] Tibbett also designated a letter dated July 5, 2019, on letterhead identifying Financial Asset Management Systems, Inc. which listed a principal amount of $7,558, fees and costs of $2,645.30, and a total amount of $10,203.30 and stated: "Your defaulted private credit student loan(s) referenced above has/have been placed with Financial Asset Management Systems, Inc. (FAMS). Rock Creek Capital, LLC indicates that your loan has defaulted and has contracted FAMS to work with you to resolve your debt." *Id.* at 98. She designated a letter on letterhead listing Financial Asset Management Systems, Inc., dated October 14, 2019, which listed a "balance owed" of $9,447.50 and a "settle for" amount of $7,085.55 and stated: "Your delinquent ROCK CREEK account remains in the inventory of Financial Asset Management Systems, Inc. (FAMS)." *Id.* at 100. She also designated a letter on letterhead listing Financial Asset Management Systems, Inc., dated February 17, 2020, which listed a principal amount of $7,558, fees and costs of $1,889.50, and a total amount of $9,447.50, and stated: "We are excited to offer you a 40% discount to settle your account balance in full!" *Id.* at 102.

[17] On August 4, 2022, Tibbett filed a "Motion for Pending Matters to be Determined by Presiding Judge or Alternatively, for Designation of Judge." Appellant's Appendix Volume IV at 198. Tibbett asked that "the presiding Judge, Jason A. Thompson, rule on the pending motions" or, "[i]n the alternative and assuming the Presiding Judge remains unavailable, [she] asks that the Court designate the judge to preside over this proceeding." *Id.* She also asserted that she "believes she has been prejudiced by inconsistent rulings and forfeiture of a statutory right." *Id.* On August 10, 2022, Rock Creek filed a response in opposition to Tibbett's motion. On August 11, 2022, Tibbett filed a reply.

[18] On October 20, 2022, Judge Thompson held a hearing. Rock Creek's counsel asserted that Senior Judge Thacker "found that Indiana licensing law does not apply to Rock Creek in this case" and "[t]herefore, Rock Creek owes no duty to Ms. Tibbett and Tibbett's negligence claim fails as a matter of law." Transcript Volume II at 104. He also asserted: "[W]hen you look at the allegations of her fraud claim along with her deposition testimony it is clear that her fraud claim is based on the licensing issue as well." *Id.*

[19] Tibbett's counsel argued that Senior Judge Thacker "issued a ruling based on his interpretation of the collection agency license" and "[t]he FDCPA is about being a debt collector while the [Indiana Deceptive Consumer Sales Act] is about being a supplier." *Id.* at 108. He also asserted that "this entire issue is closed because Rock Creek admitted in its' [sic] Answer it was a debt collector . . . ." *Id.* Rock Creek's counsel asserted that "Rock Creek is not a debt

collector. So, undisputed the FDCPA does not apply to Rock Creek." *Id.* at 109. Tibbett's counsel stated that Rock Creek's counsel "told you today, at least two or three times, Rock Creek is not a debt collector in summary format, but she has not acknowledged the fact that they admitted that it is in their Answer." *Id.* at 111. Rock Creek's counsel stated: "I just wanted to get that corrected that we denied being debt collectors." *Id.* at 113. Judge Thompson took the matter under advisement.

[20] On October 20, 2022, Tibbett filed a "Notice of Correction and Authority" alleging that Rock Creek admitted that it was a debt collector as defined under the FDCPA in Paragraph 28 of its answer to the counterclaim. Appellant's Appendix Volume IV at 216 (capitalization omitted). On October 25, 2022, Rock Creek filed a motion in response to Tibbett's motion and asserted that it had not admitted that it was a debt collector under Indiana law.

[21] On January 10, 2023, Judge Thompson entered an order finding that Rock Creek sought to collect "a debt/alleged obligation from Tibbett for a student loan," Tibbett was a natural person and a consumer, and the "debt/alleged obligation was for personal purposes, Tibbett's education." Appellant's Appendix Volume II at 21. The court reviewed the definitions of a debt collector under the FDCPA in 15 U.S.C. 1692a(6) and the definition of supplier under the Indiana Deceptive Consumer Sales Act in Ind. Code § 34-5-0.5-2(a)(3). It found that Rock Creek was a debt collector and supplier and was subject to the FDCPA and the Indiana Deceptive Consumer Sales Act. It also found:

18. Rock Creek's owner, Chad Welch, solicits mainly educational institutions for claims owed or due to the educational institutions. Mr. Welch then purchases the defaulted debt, of which is predominantly student loan debt. *Welch dep. 33:15-34:2; Id. 36:24-37:1; Id. 37:15-19.*

19. Rock Creek buys defaulted debt (receivables) at a discounted rate and then pursues legal action against the alleged debt obligor at the alleged initial amount of the debt.

20. Rock Creek answered in the affirmative in its pleadings it is a debt collector. *See Answer at 24, 25 (June 9[,] 2021).*

21. Rock Creek is a collection agency.

22. Rock Creek is not a licensed collection agency in the State of Indiana.

23. Rock Creek does not possess an original agreement between Tibbett and the original holder of the debt, Ross Education, LLC.

24. Rock Creek contracts with multiple collection agencies, specifically Financial Asset Management Systems Inc. ("FAMS"), in this particular case.

25. Tibbett received multiple inaccurate letters/correspondence from Rock Creek and/or FAMS, some of which depict[] conflicting amounts of alleged indebtedness.

*Id.* at 24. The court denied Rock Creek's motion for partial summary judgment, granted Tibbett's motion for partial summary judgment, and concluded that Rock Creek violated the FDCPA and the Indiana Deceptive Consumer Sales Act. The court scheduled a class certification evidentiary hearing for April 24, 2023, ordered the parties to proceed with discovery for the hearing, and scheduled a jury trial for November 2023. The court also noted

that "[a]ny motions or requests not specifically ruled upon in this Order is denied." *Id.* at 25 (capitalization and emphasis omitted). Rock Creek filed a motion to certify the court's January 10, 2023 order for interlocutory appeal, the trial court granted Rock Creek's motion, and this Court accepted the appeal.

## Discussion

[22] We review an order for summary judgment *de novo*, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). The moving party bears the initial burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). If the moving party succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact. *Id.* We construe all factual inferences in favor of the nonmoving party and resolve all doubts as to the existence of a material issue against the moving party. *Id.* Our review is limited to those materials designated to the trial court. *Mangold v. Ind. Dep't of Nat. Res.*, 756 N.E.2d 970, 973 (Ind. 2001). We must carefully review a decision on a summary judgment motion to ensure that a party was not improperly denied its day in court. *Id.* at 974.

[23] To the extent we must interpret statutory law, "[o]ur first task when interpreting a statute is to give its words their plain meaning and consider the structure of the statute as a whole." *ESPN, Inc. v. Univ. of Notre Dame Police Dep't*, 62 N.E.3d 1192, 1195 (Ind. 2016). "We 'avoid interpretations that depend on selective

reading of individual words that lead to irrational and disharmonizing results.'" *Id.* (quoting *West v. Office of Ind. Sec'y of State*, 54 N.E.3d 349, 355 (Ind. 2016) (internal quotation omitted)). "As we interpret the statute, we are mindful of both 'what it "does say" and what it "does not say."'" *Id.* (citations omitted). To the extent there is an ambiguity, we determine and give effect to the intent of the legislature as best it can be ascertained. *Id.* at 1196. "[W]e do not presume that the Legislature intended language used in a statute to be applied illogically or to bring about an unjust or absurd result." *Id.* (quoting *Anderson v. Gaudin*, 42 N.E.3d 82, 85 (Ind. 2015) (internal quotation omitted)). "[W]hen engaging in statutory interpretation, we 'avoid an interpretation that renders any part of the statute meaningless or superfluous.'" *Id.* at 1199 (quoting *Hatcher v. State*, 762 N.E.2d 189, 192 (Ind. Ct. App. 2002)).

[24]  Rock Creek argues that it is not a collection agency under the Indiana Collection Agency Act. It asserts that "both the [Indiana Collection Agency Act's] definition of 'collection agency' and 'debt' unambiguously refer to debts owned by another that the collection agency is hired to attempt to collect." Appellant's Brief at 18. It contends that "[t]here is also no dispute that Ms. Tibbett's debt was owed and due directly to Rock Creek rather than 'to another'" and that it "was not hired by 'another' to demand, collect, or enforce payment of Ms. Tibbett's debt.'" *Id.* It contends it was not a "collection agency" because it was not seeking to collect on a "claim" as defined by the Indiana Collection Agency Act. *Id.* It argues that, as a result, it was not obligated to obtain a license in order to collect debts that are owed directly to it.

It contends that Senior Judge Thacker's March 28, 2022 order correctly held that it was not a collection agency under the Indiana Collection Agency Act and that Judge Thompson erred in the January 10, 2023 order holding to the contrary. It further argues that, even if the definition of collection agency in the Indiana Collection Agency Act applied to any entity that engages in soliciting claims for collection regardless of ownership status of such a claim, Tibbett's allegations fail because it does not solicit claims within the contemplation of the statute because the statute is intended to regulate only entities that solicit claims owned by "another" to be collected on behalf of that "other," not entities who purchase claims and then try to collect on them. *Id.* at 21. Rock Creek argues that "the administrative agency charged with the duty of enforcing the statute, the Indiana Secretary of State – Securities Division, has determined that the [Indiana Collection Agency Act] does not apply to debt owners attempting to collect on debts that they themselves own." *Id.* at 18-19 (citing Appellant's Appendix Volume III at 145-146).

[25] Rock Creek argues that it is not subject to the FDCPA because it does not qualify as a debt collector as defined by the statute. It cites *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79 (2017), and argues that Judge Thompson's holding in the January 10, 2023 order that it violated the FDCPA constitutes plain legal error.

[26] Tibbett contends that the Indiana collection agency statute has two independent and separate bases for determining if a person is a collection agency including "engaging directly or indirectly and as a primary or secondary object, business,

or pursuit, *in soliciting claims for collection*, **or** in the collection of claims owed or due or asserted to be owed or due to another." Appellee's Brief at 19 (quoting Ind. Code § 25-11-1-1(b)) (emphasis added in Brief). As for the FDCPA, Tibbetts argues that Rock Creek ignores the word "or" in the FDCPA and that Rock Creek was a debt collector as defined by 15 U.S.C.A. § 1692a(6). *Id.* at 15. Tibbett argues that *Henson* is not instructive because that case did not address whether a person whose principal business is debt collection qualifies as a debt collector. She contends that "for FDCPA coverage of debt buyers, the key question is whether the debt buyer's principal purpose is debt collection." *Id.* at 18.

[27] In reply, Rock Creek argues that "a 'claim' under the [Indiana Collection Agency Act] is either (1) an amount actually owed or due to another, or (2) an amount claimed to be owed or due to another" and that, "in all circumstances, the 'claim' refers to amounts due or claimed to be due to 'another' – not debts directly owned by the entity trying to enforce them." Appellant's Reply Brief at 7. Rock Creek asserts Tibbett does not contest the fact that the Indiana Secretary of State advises that the Indiana Collection Agency Act does not apply to debt owners who attempt to collect on debts they own themselves. As to the FDCPA, Rock Creek argues that Tibbett's argument is waived because she failed to timely raise the "principal purpose" theory at the summary judgment stage of these proceedings. *Id.* at 11. It asserts that, waiver aside, the argument fails because there is no evidence that its sole principal purpose is the collection of debts and the record is devoid of any evidence showing that it

engaged in collecting on any of the debts it owns. Rock Creek contends that it "invests in debt, but leaves the 'collection' to actual debt collectors retained for that purpose" and that Tibbett "failed to show that the collection of debts is *the* principal purpose of Rock Creek's business." *Id.* at 15-16. It argues that Welch testified that Rock Creek does not contact any consumers directly, uses attorneys and collection agencies to collect on the debts it owns, does not send letters to consumers, and does not draft or approve letters sent to consumers by collection agencies or law firms. It also argues that it did not judicially admit that it is a debt collector because the statements made in its June 9, 2021 answer were legal conclusions rather than factual assertions, the statements were intended to qualify that it uses licensed collection agencies and law firms to collect outstanding debts, and it denied that it was a debt collector under the FDCPA in Paragraph 31 of its answer to Tibbett's counterclaim. It also asserts that Welch testified that Rock Creek was not a debt collector and that, when its answer is viewed in its entirety, it is clear that it did not admit to being a debt collector subject to the FDCPA.

[28] The January 10, 2023 order found that Rock Creek violated the Indiana Deceptive Consumer Sales Act and the FDCPA. We begin with a discussion of the Indiana Deceptive Consumer Sales Act. The Indiana Deceptive Consumer Sales Act "is a remedial statute and 'shall be liberally construed and applied to promote its purposes and policies' of protecting consumers from deceptive or unconscionable sales practices." *Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 332 (Ind. 2013) (quoting Ind. Code § 24-5-0.5-1 (2007 Repl.)). *See also*

*McKinney v. State*, 693 N.E.2d 65, 67 (Ind. 1998) ("The Indiana Deceptive Consumer Sales Act [], IND.CODE §§ 24-5-0.5-1 to -10 (1993 & Supp. 1997), provides remedies to consumers and the attorney general for practices that the General Assembly deemed deceptive in consumer transactions.") (footnote omitted).  Ind. Code § § 24-5-0.5-1 provides:

> (a) This chapter shall be liberally construed and applied to promote its purposes and policies.
>
> (b) The purposes and policies of this chapter are to:
>
>> (1) simplify, clarify, and modernize the law governing deceptive and unconscionable consumer sales practices;
>>
>> (2) protect consumers from suppliers who commit deceptive and unconscionable sales acts; and
>>
>> (3) encourage the development of fair consumer sales practices.

Ind. Code § 24-5-0.5-3 is titled "Deceptive acts."  At the time of Tibbett's April 20, 2021 Counterclaim and Class Action, subsection (a), which was cited by Tibbett in her April 2021 filing, provided:

> A supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction.  Such an act, omission, or practice by a supplier is a violation of this chapter whether it occurs before, during, or after the transaction.  An act, omission, or practice prohibited by this section includes both implicit and explicit misrepresentations.

Ind. Code § 24-5-0.5-3(a).[3]

Ind. Code § 24-5-0.5-2(a)(1) provides that a "[c]onsumer transaction" includes "[t]he collection of or attempt to collect a debt by a debt collector." Ind. Code § 24-5-0.5-2(a)(3) defines "[s]upplier" as:

> (A) A seller, lessor, assignor, or other person who regularly engages in or solicits consumer transactions, including soliciting a consumer transaction by using a telephone facsimile machine to transmit an unsolicited advertisement. The term includes a manufacturer, wholesaler, or retailer, whether or not the person deals directly with the consumer.
>
> (B) A debt collector.

Ind. Code § 24-5-0.5-2(a)(13) provides:

> "Debt collector" has the meaning set forth in 15 U.S.C. 1692(a)(6).[4] The term does not include a person admitted to the practice of law in Indiana if the person is acting within the course and scope of the person's practice as an attorney. The term includes a debt buyer (as defined in IC 24-5-15.5).[5]

---

[3] Ind. Code § 24-5-0.5-3 was subsequently amended by Pub. L. No. 34-2022, § 7 (eff. July 1, 2022). However, subsection (a) remained unchanged.

[4] It appears that the reference to 15 U.S.C. 1692(a)(6) contains a scrivener's error by including a parenthetical around the "a". 15 U.S.C. 1692(a)(6) contains a Congressional finding regarding abusive practices, while 15 U.S.C. 1692a(6) provides a definition for debt collector.

[5] Ind. Code § 24-5-15.5-3 provides:

> (a) As used in this chapter, "debt buyer" means a person that is regularly engaged in the business of purchasing debt for collection purposes, regardless of whether the person:
>
> > (1) collects the debt;

[31] To the extent Ind. Code § 24-5-0.5-2(a)(13) cites 15 U.S.C. 1692a(6), which is a part of the FDCPA, we note that Congress observed in the FDCPA that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C.A. 1692(a). It also observed that "[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers." 15 U.S.C.A. 1692(b). The FDCPA provides that its purposes include "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C.A. 1692(e).

[32] 15 U.S.C. 1692a(6), which is referenced by Ind. Code § 24-5-0.5-2(a)(13), provides:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F)

---

(2) hires another person to collect the debt; or

(3) hires an attorney for litigation connected to collection of the debt.

(b) The term does not include a person that acquires a debt incidental to the purchase of a portfolio that predominantly consists of debt that has not been charged off.

of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6)[6] of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include--

* * * * *

(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

---

[6] 15 U.S.C. 1692f provides:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

* * * * *

(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--

(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

(B) there is no present intention to take possession of the property; or

(C) the property is exempt by law from such dispossession or disablement.

[33]    Rock Creek does not argue that it was not a supplier as defined under the Indiana Deceptive Consumer Sales Act. Rock Creek also does not develop an argument that its actions did not constitute an unfair, abusive, or deceptive act, omission, or practice under the Deceptive Consumer Sales Act found in Ind. Code Chapter 24-5-0.5. Even assuming that Rock Creek did not admit it was a debt collector as defined under the FDCPA, we note that 15 U.S.C. 1692a(6) defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." The first part of the definition suggests that a person or entity collecting their own debts can be a "debt collector." The second sentence in the definition of "debt collector" supports this conclusion by noting: "Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." The designated evidence reveals that Welch, the manager at Rock Creek, testified that Rock Creek was incorporated in Wyoming and based in Texas and it utilized agencies to contact consumers. He stated Rock Creek purchased defaulted debt and predominantly student loans. He testified that "Rock Creek's business is buying defaulted receivables at a discount and trying to get those accounts to pay what is – what they owe." Appellee's Appendix Volume V at 34. When asked if "the purchase of defaulted debt is not just secondary; that's your primary business pursuit," he

answered: "Correct." *Id.* When asked if he would say that "in 2019 that [he] spent the majority of [his] time towards trying to purchase defaulted debt from other entities," he answered affirmatively. *Id.* at 45. He further testified that he contacted "general C-level executives to see if they want[ed] to monetize their defaulted loans."[7] *Id.* at 37. He testified that original creditors included Ross Education, LLC, Sallie Mae Bank, and SCL Titling Trust. When asked if he had to make "lots of calls in order to find an entity that you can purchase from," he answered: "Yes. And lots of time." *Id.* at 40-41. When asked where Rock Creek did business, he answered: "Nationwide." *Id.* at 30. He also stated: "I don't know exactly every state that we have accounts. I just know it's – I mean, I know our portfolio is nationwide." *Id.* He further testified that Rock Creek placed debt for collection with collection agencies. Accordingly, we conclude that the designated evidence indicates that Rock Creek constitutes a "person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts" or a "debt collector" under 15 U.S.C. § 1692a(6).[8] *See Tepper v. Amos Fin.,* LLC, 898

---

[7] When asked to explain what he meant by "C-level executives," Welch answered in part: "CEO, CFO, COO, chief operating officer, chief financial officer, chief executive officer, treasurer. It could be – it could be a manager." Appellee's Appendix Volume V at 37.

[8] We note that Rock Creek's argument under the FDCPA on appeal is limited to its assertion that it is not subject to the FDCPA because it does not qualify as a debt collector as defined by the FDCPA. To the extent Rock Creek argues that Tibbett waived her ability to argue that it is a debt collector under the FDCPA's principal purpose prong, we note that Tibbett's counsel asserted at the October 20, 2022 hearing that Rock Creek's counsel "told you today, at least two or three times, Rock Creek is not a debt collector in summary format, but she has not acknowledged the fact that they admitted that it is in their Answer" and "[s]he has not acknowledged the fact that Rock Creek's principal purpose is the collection of debt and if you look at what we put in our briefing it shows that without question." Transcript Volume II at 111. In her April 20, 2021 Counterclaim and Class Action, Tibbett asserted that "Rock Creek is a business entity who uses

F.3d 364, 371 (3d Cir. 2018) ("[W]e follow the plain text of the statute: an entity whose principal purpose of business is the collection of any debts is a debt collector regardless [of] whether the entity owns the debts it collects."); *McAdory v. M.N.S. & Assocs., LLC*, 952 F.3d 1089, 1090 (9th Cir. 2020) (addressing "whether a business that buys and profits from consumer debts, but outsources direct collection activities, qualifies as a 'debt collector' for purposes of the [FDCPA]," and holding that "an entity that otherwise meets the 'principal purpose' definition of debt collector cannot avoid liability under the FDCPA merely by hiring a third party to perform its debt collection activities"), *cert. denied*, 141 S. Ct. 627 (2020).[9] We also conclude that Rock Creek constitutes a "[d]ebt collector" under the Indiana Deceptive Consumer Sales Act and specifically under Ind. Code § 24-5-0.5-2(a)(13) which provides that a debt

---

instrumentalities of interstate commerce or the mails, the principal purpose of which is the collection of debts." Appellant's Appendix Volume III at 97. We cannot say Tibbett waived this argument.

[9] To the extent Rock Creek cites *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 137 S. Ct. 1718 (2017), we do not find that case instructive. In *Henson*, a complaint alleged that CitiFinancial Auto loaned money to Ricky Henson and others seeking to buy cars; that petitioners defaulted on those loans; that Santander Consumer USA Inc. ("Santander") then purchased the defaulted loans from CitiFinancial; and that Santander sought to collect in ways petitioners believed troublesome under the FDCPA. 582 U.S. 79, 81, 137 S. Ct. 1718, 1720-1721. The United States Supreme Court addressed "a question about who exactly qualifies as a 'debt collector'" under the FDCPA. *Id.* at 81, 137 S. Ct. at 1720. The Court observed: "Everyone agrees that the term embraces the repo man—someone hired by a creditor to collect an outstanding debt. But what if you purchase a debt and then try to collect it for yourself—does that make you a 'debt collector' too? That's the nub of the dispute now before us." *Id.* However, the Court stated that it did not attempt to answer certain questions. Specifically, the Court stated that the parties alluded to the "statutory definition of the term 'debt collector'—one that encompasses those engaged 'in any business the principal purpose of which is the collection of any debts,'" and observed that the parties had not litigated that definition and the Court had not agreed to address it in granting certiorari. *Id.* at 82, 137 S. Ct. at 1721 (quoting 15 U.S.C. § 1692a(6)).

collector has the meaning set forth in 15 U.S.C. 1692a(6) and "[t]he term includes a debt buyer (as defined in IC 24-5-15.5)."

[34] For the foregoing reasons, we affirm the trial court's grant of Tibbett's motion for partial summary judgment.[10]

[35] Affirmed.

Tavitas, J., and Foley, J., concur.

ATTORNEYS FOR APPELLANT

Jacob C. Cohn
Brittney B. Rykovich
Hunter T. Edmonds
Lori J. Quinn
Gordon & Rees
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Duran L. Keller
Keller Law
Lafayette, Indiana

---

[10] To the extent Rock Creek argues that it is not a collection agency under Ind. Code § 25-11-1-1(b), Rock Creek does not present argument regarding the impact of a determination regarding whether it was a collection agency as defined by Ind. Code § 25-11-1-1(b) on Tibbett's claims under the Indiana Deceptive Consumer Sales Act or the FDCPA, and we do not address that aspect.